1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Shaun Setareh (SBN 204514)
    shaun@setarehlaw.com
H. Scott Leviant (SBN 200834)
    scott@setarehlaw.com
**SETAREH LAW GROUP**
9454 Wilshire Boulevard, Suite 907
Beverly Hills, California  90212
Telephone:    (310) 888-7771
Facsimile:    (310) 888-0109

Attorneys for Plaintiff JULIEN POINSIGNON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIEN POINSIGNON, on behalf of himself, all others similarly situated,<br><br>           Plaintiff,<br><br>vs.<br><br>IMPERVA, INC.,<br><br>           Defendants. | Case No. 3:17-cv-05653-EMC<br><br>CLASS ACTION<br><br>**FIRST AMENDED COMPLAINT**<br><br>1.  Violation of 15 U.S.C. §§ 1681b(b)(2)(A) (Fair Credit Reporting Act);<br><br>**JURY TRIAL DEMANDED**<br><br>Complaint Filed:    August 25, 2017<br>Removed:    September 29, 2017 |

COMES NOW, Plaintiff JULIEN POINSIGNON (hereafter "PLAINTIFF"), on behalf of himself, all others similarly situated, complains and alleges as follows:

## INTRODUCTION

1.     PLAINTIFF brings this class action against defendant IMPERVA, INC., a Delaware corporation; INSPERITY PEO SERVICES, L.P., a Delaware limited partnership; and DOES 1 through 100, inclusively (collectively referred to as "DEFENDANTS") for alleged violations of the Fair Credit Reporting Act ("FCRA") and similar California laws.

2.     PLAINTIFF alleges that DEFENDANTS routinely acquire consumer, investigative consumer and/or consumer credit reports (referred to collectively as "credit and background reports") to conduct background checks on PLAINTIFF and other prospective, current and former employees and use information from credit and background reports in connection with their hiring process without providing proper disclosures and obtaining proper authorization in compliance with the law.

3.     PLAINTIFF, individually and on behalf of all others similarly situated current, former, and prospective employees, seeks compensatory and punitive damages due to DEFENDANTS' systematic and willful violations of the FCRA, 15 U.S.C. §§ 1681 *et seq.*

## PARTIES

4.     PLAINTIFF was employed by DEFENDANTS as an hourly, non-exempt employee working in the State of California from approximately November 9, 2015 through January 24, 2017.

5.     Defendant IMPERVA, INC. ("IMPERVA") is a corporation organized and existing under the laws of Delaware and operates in the State of California.

6.     PLAINTIFF is ignorant of the true names, capacities, relationships, and extent of participation in the conduct alleged herein, of the defendants sued as DOES 1 through 100, inclusive, but is informed and believes and thereon alleges that said defendants are legally responsible for the wrongful conduct alleged herein and therefore sues these defendants by such fictitious names.  PLAINTIFF will amend the Complaint to allege the true names and capacities of the DOE defendants when ascertained.

7.     PLAINTIFF is informed and believes and thereon alleges that, at all relevant times herein, all DEFENDANTS were the agents, employees and/or servants, masters or employers of the remaining DEFENDANTS, and in doing the things hereinafter alleged, were acting within the course and scope of

such agency or employment, and with the approval and ratification of each of the other DEFENDANTS.

8.      PLAINTIFF alleges that each and every one of the acts and omissions alleged herein were performed by, and/or attributable to, all DEFENDANTS, each acting as agents and/or employees, and/or under the direction and control of each of the other DEFENDANTS, and that said acts and failures to act were within the course and scope of said agency, employment and/or direction and control.

## CLASS ALLEGATIONS

9.      This action has been brought and may be maintained as a class action pursuant to Federal Rules of Civil Procedure 23 because there is a well-defined community of interest among the persons who comprise the readily ascertainable classes defined below and because PLAINTIFF is unaware of any difficulties likely to be encountered in managing this case as a class action.

10.     **Class Definitions:** The CLASS is defined as follows:

**FCRA Class:**  All of DEFENDANTS' and/or any staffing agencies' and/or any third party parties' current, former and prospective applicants for employment in the United States who applied for a job with DEFENDANTS at any time during the period for which a background check was performed beginning five years prior to the filing of this action and ending on the date that final judgment is entered in this action.

11.     **Reservation of Rights:**  PLAINTIFF reserves the right to amend or modify the class definitions with greater specificity, by further division into subclasses and/or by limitation to particular issues.

12.     **Numerosity:** The class members are so numerous that the individual joinder of each individual class member is impractical.  While PLAINTIFF does not currently know the exact number of class members, PLAINTIFF is informed and believes that the actual number exceeds the minimum required for numerosity under California law.

13.     **Commonality and Predominance:** Common questions of law and fact exist as to all class members and predominate over any questions which affect only individual class members. These questions include, but are not limited to:

(a)     Whether DEFENDANTS failed to comply with the requirements of 15 U.S.C 7001 section 101(c)(1)?

(b)     Wherein DEFENDANTS willfully failed to provide the class with stand-alone written disclosures before obtaining a credit or background report in compliance

with the statutory mandates?

(c)     Whether DEFENDANTS willfully failed to identify the name, address, telephone number, and/or website of the investigative consumer reporting agency conducting the investigation?

(d)     Whether DEFENDANTS willfully failed to identify the source of the credit report to be performed?

(e)     Wherein DEFENDANTS willfully failed to comply with the FCRA?

14.     **Typicality:**  PLAINTIFF'S claims are typical of the other class members' claims. PLAINTIFF is informed and believes and thereon alleges that DEFENDANTS have a policy, practice or a lack of a policy which resulted in DEFENDANTS failing to comply with the FCRA as alleged herein.

15.     **Adequacy of Class Representative:** PLAINTIFF is an adequate class representative in that she has no interests that are adverse to, or otherwise in conflict with, the interests of absent class members. PLAINTIFF is dedicated to vigorously prosecuting this action on behalf of class members. PLAINTIFF will fairly and adequately represent and protect the interests of class members.

16.     **Adequacy of Class Counsel:** PLAINTIFF'S counsel are adequate class counsel in that they have no known conflicts of interest with PLAINTIFF or absent class members, are experienced in class action litigation and are dedicated to vigorously prosecuting this action on behalf of PLAINTIFF and absent class members.

17.     **Superiority:** A class action is vastly superior to other available means for fair and efficient adjudication of class members' claims and would be beneficial to the parties and the Court.  Class action treatment will allow a number of similarly situated persons to simultaneously and efficiently prosecute their common claims in a single forum without the unnecessary duplication of effort and expense that numerous individual actions would entail. In addition, the monetary amounts due to many individual class members are likely to be relatively small and would thus make it difficult, if not impossible, for individual class members to both seek and obtain relief. Moreover, a class action will serve an important public interest by permitting class members to effectively pursue the recovery of monies owed to them. Further, a class action will prevent the potential for inconsistent or contradictory judgments inherent in individual litigation.

1

## GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

2     18.    When PLAINTIFF applied for employment with DEFENDANTS, DEFENDANTS

3  required him to fill out a disclosure and authorization form to perform a background investigation.

4     19.    Upon information and belief, PLAINTIFF was provided with a disclosure and

5  authorization form that contained the following (A true and correct copy is attached as Exhibit A.):

### DISCLOSURE REGARDING BACKGROUND INVESTIGATION

The Company or Employer indicated below may obtain information about you
for employment purposes (including contract or volunteer services) from the
following consumer reporting agency: Employment Background Investigations,
Inc. (EBI), P.O. Box 629, Owings Mills, MD 21117, 1-800-324-7700.  Thus,
you may be the subject of a "consumer report" (investigative consumer reports
in California) which may include, but not limited to, public record information,
employment, education and license verification, etc. In addition, investigative
consumer reports, as defined by the federal Fair Credit Reporting Act, may be
obtained which are gathered from personal interviews with employers, and other
current or past associates, which may include information about your character,
general reputation, personal characteristics, and/or mode of living.  These
reports may be obtained at any time after receipt of your authorization and, if
you are hired, throughout your employment.

### ACKNOWLEDGMENT AND AUTHORIZATION

I acknowledge receipt of the DISCLOSURE REGARDING BACKGROUND
INVESTIGATION and a SUMMARY OF YOUR RIGHTS UNDER THE FAIR
CREDIT REPORTING.  I hereby authorize the obtaining and furnishing of
"consumer reports" and/or "investigative consumer reports" at any time after
receipt of this authorization and, if I am hired, throughout my employment.  I
also authorize Employer to share any consumer reports with companies to
which Employer may assign me to work.  To this end, I hereby authorize,
without reservation, any law enforcement agency, administrator, local, state or
federal agency, institution, school or university (public or private), information
service bureau, employer, or insurance company to furnish any and all
background information (including, but not limited to, driving and/or motor
vehicle records, transcripts, grades and attendance records, employment history,
salary information and references, workers compensation documents, records or
reports in Pennsylvania, from the Industrial Commission of Arizona and in all
other states, drug and alcohol testing results) requested by EBI acting on behalf
of Employer, and/or Employer itself.  If and when applicable, I also hereby
authorize any past employers regulated by the U.S. Department of
Transportation (49 CFR Part 40 and 49 CFR Part 391(, to provide (a) work
history information, and (b) drug and alcohol testing records from the previous
three years, to EBI acting on behalf of Employer, and/or Employer itself.  I
agree that a facsimile ("fax") or photographic copy of this Authorization shall
be as valid as the original.

You have the right, upon written request made within a reasonable time after
receipt of this notice, to request disclosure of the nature and scope of any
investigative consumer report or consumer report.  For complete details
pertaining to EBI's privacy practices, including whether your personal
information will be sent outside of the U.S. or its territories, EBI's Privacy
Policy can be viewed at http://www.ebiinc.com/privacy-policy.html.

California, Minnesota and Oklahoma applicants or employees only: Please

check the box if you would like to receive a copy of a consumer report if one is obtained by the Company. ☐

New York applicants or employees only: By signing below, you also acknowledge receipt of Article 23-A of the New York Corrections Law.

20.     The disclosure provided by DEFENDANTS contained extraneous and superfluous language that does not consist solely of the disclosure as required by federal and California laws.

21.     Moreover, the disclosure provided by DEFENDANTS incorporates by reference a five-page Privacy Policy of a third-party consumer reporting agency and as such does not consist solely of the disclosure as required by federal and California laws. (A true and correct copy is attached as Exhibit B.)

22.     Plaintiff's written offer of employment with DEFENDANTS was expressly contingent upon "passing the Company's mandatory background verification, even if this information is not known until after your employment commences." (A true and correct copy is attached as Exhibit C.)

23.     Plaintiff is informed and believes, and thereupon alleges that DEFENDANTS in fact did obtain a background check report from EBI as confirmed by DEFENDANTS' Human Resources Coordinator on or about October 29, 2015. (A true and correct copy is attached as Exhibit D.)

## FIRST CAUSE OF ACTION

**FAILURE TO MAKE PROPER DISCLOSURE IN VIOLATION OF THE FCRA**

**(15 U.S.C. §§ 1681b(b)(2)(A))**

**(By Plaintiff and the FCRA Class Against All Defendants)**

24.     PLAINTIFF incorporates all paragraphs of this Complaint as if fully alleged herein.

25.     DEFENDANTS are "persons" as defined by Section 1681a(b) of the FCRA.

26.     PLAINTIFF and class members are "consumers" within the meaning Section 1681a(c) of the FCRA, because they are "individuals."

27.     Section 1681a(d)(1) of the FCRA defines "consumer report" as

any oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility" for employment purposes.

Thus a credit and background report qualifies as a consumer report.

28.   Section 1681a(e) of the FCRA defines "investigative consumer report" as:

a consumer report or portion thereof in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through personal interviews with neighbors, friends, or associates of the consumer reported on or with whom he is acquainted or who may have knowledge concerning any such items of information.

Thus a credit and background report qualifies as an investigative consumer report.

29.   Section 1681b(b) of the FCRA provides, in relevant part:

Conditions for furnishing and using consumer reports for employment purposes

(2) Disclosure to consumer

In general

Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—

a *clear and conspicuous* disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that *consists solely of the disclosure*, that a consumer report may be obtained for employment purposes; and

the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person. (Emphasis Added).

30.   Section 1681b(b)(2)(A)(i) requires that a clear and conspicuous disclosure be made in writing.

31.   Because DEFENDANTS' disclosures do not meet the requirement of Section 101(c)(1) of 15 U.S.C. 7001, the disclosures do not satisfy the written requirement.

32.   As described above, PLAINTIFF alleges, on information and belief, that in evaluating her and other class members for employment, DEFENDANTS procured or caused to be prepared credit and background reports (i.e., a consumer report and/or investigative consumer report, as defined by 15 U.S.C. § 1681a(d)(1)(B) and 15 U.S.C. § 1681a(e)).

33.   The purported disclosures do not meet the requirements under the law because they are embedded with extraneous information, and are not clear and unambiguous disclosures in stand-alone documents.

34.     Under the FCRA, it is unlawful to procure or caused to be procured, a consumer report or investigative consumer report for employment purposes unless the disclosure is made in a document that consists solely of the disclosure and the consumer has authorized, in writing, the procurement of the report. 15 U.S.C. § 1681b(b)(2)(A)(i)-(ii).  The inclusion of extraneous information, therefore, violates § 1681b(b)(2)(A) of the FCRA.

35.     Although the disclosure and the authorization may be combined in a single document, the Federal Trade Commission ("FTC") has warned that the form should not include any extraneous information or be part of another document.  For example, in response to an inquiry as to whether the disclosure may be set forth within an application for employment or whether it must be included in a separate document, the FTC stated:

> The disclosure may not be part of an employment application because the language [of 15 U.S.C. § 1681b(b)(2)(A) is] intended to ensure that it appears conspicuously in a document not encumbered by any other information. The reason for requiring that the disclosure be in a stand-alone document is to prevent consumers from being distracted by other information side-by-side within the disclosure.

36.     The plain language of the statute also clearly indicates that the inclusion of a liability release in a disclosure form violates the disclosure and authorization requirements of the FCRA, because such a form would not consist "solely" of the disclosure.  In fact, the FTC expressly has warned that the FCRA notice may not include extraneous information such as a release.  In a 1998 opinion letter, the FTC stated:

> [W]e note that your draft disclosure includes a waiver by the consumer of his or her rights under the FCRA. The inclusion of such a waiver in a disclosure form will violate Section 604(b)(2)(A) of the FCRA, which requires that a disclosure consist 'solely' of the disclosure that a consumer report may be obtained for employment purposes.

37.     In a report dated July 2011, the FTC reiterated that: "the notice [under 15 U.S.C § 1681b(b)(2)(A)] may not include extraneous or contradictory information, such as a request for a consumer's waiver of his or her rights under the FCRA."

38.     By including extraneous information, DEFENDANTS willfully disregarded the FTC's regulatory guidance and violated Section 1681b(b)(2)(A) of the FCRA. Additionally, the inclusion of the extraneous provisions causes the disclosure to fail to be "clear and conspicuous" and "clear and accurate," and thus violates §§ 1681b(b)(2)(A) and 1681d(a).

39.     DEFENDANTS' conduct in violation of Section 1681b(b)(2)(A) of the FCRA was and is willful. DEFENDANTS acted in deliberate or reckless disregard of their obligations and the rights of applicants and employees, including PLAINTIFF and class members. DEFENDANTS' willful conduct is reflected by, among other things, the following facts:

(a)     DEFENDANTS are a large corporation with access to legal advice;

(b)     DEFENDANTS required a purported authorization to perform credit and background checks in the process of employing the class members which, although defective, evidences DEFENDANTS' awareness of and willful failure to follow the governing laws concerning such authorizations; and,

(c)     The plain language of the statute unambiguously indicates that inclusion of other extraneous information in a disclosure form violates the disclosure and authorization requirements.

40.     Based upon the facts likely to have evidentiary support after a reasonable opportunity for further investigation and discovery, PLAINTIFF alleges that DEFENDANTS have a policy and practice of procuring investigative consumer reports or causing investigative consumer reports to be procured for applicants and employees without informing such applicants of their right to request a summary of their rights under the FCRA at the same time as the disclosure explaining that an investigative consumer report may be made. Pursuant to that policy and practice, DEFENDANTS procured investigative consumer reports or caused investigative consumer reports to be procured for PLAINTIFF and class members, as described above, without informing class members of their rights to request a written summary of their rights under the FCRA.

41.     Accordingly, DEFENDANTS willfully violated and continue to violate the FCRA including, but not limited to, §§ 1681b(b)(2)(A) and 1681d(a). DEFENDANTS' willful conduct is reflected by, among other things, the facts set forth above.

42.     As a result of DEFENDANTS' illegal procurement of credit and background reports by way of their inadequate disclosures, as set forth above, PLAINTIFF and class members have been injured including, but not limited to, having their privacy and statutory rights invaded in violation of the FCRA.

43.     PLAINTIFF, on behalf of himself and all class members, seeks all available remedies

1    pursuant to 15 U.S.C. § 1681n, including statutory damages and/or actual damages, punitive damages,

2    injunctive and equitable relief and attorneys' fees and costs.

3        44.    In the alternative to PLAINTIFF'S allegation that these violations were willful,

4    PLAINTIFF alleges that the violations were negligent and seeks the appropriate remedy, if any, under 15

5    U.S.C. § 1681o, including actual damages and attorneys' fees and costs.

6                                **PRAYER FOR RELIEF**

7        WHEREFORE, PLAINTIFF, on behalf of himself and all others similarly situated, prays for relief

8    and judgment against DEFENDANTS as follows:

9            (a)    An order that the action be certified as a class action;

10           (b)    An order that PLAINTIFF be appointed class representative;

11           (c)    An order that counsel for PLAINTIFF be appointed class counsel;

12           (d)    Statutory penalties;

13           (e)    Civil penalties;

14           (f)    Punitive damages;

15           (g)    Costs of suit;

16           (h)    Interest;

17           (i)    Restitution;

18           (j)    Reasonable attorneys' fees; and

19           (k)    Such other relief as the Court deems just and proper.

20                              **DEMAND FOR JURY TRIAL**

21       PLAINTIFF, on behalf of himself and all others similarly situated, hereby demands a jury trial on

22    all issues so triable.

23                                Respectfully submitted,

24    Dated: May 10, 2018,            **SETAREH LAW GROUP**

25                            By: _____

26                                Shaun Setareh
                                 H. Scott Leviant

27
                                Attorneys for Plaintiff
28

# Exhibit A

## DISCLOSURE REGARDING BACKGROUND INVESTIGATION

The Company or Employer indicated below may obtain information about you for employment purposes (including contract or volunteer services) from the following consumer reporting agency: Employment Background Investigations, Inc. (EBI), P.O. Box 629, Owings Mills, MD 21117, 1-800-324-7700. Thus, you may be the subject of a "consumer report" ( investigative consumer reports in California) which may include, but not limited to, public record information, employment, education and license verification, etc. In addition, investigative consumer reports, as defined by the federal Fair Credit Reporting Act, may be obtained which are gathered from personal interviews with employers, and other current or past associates, which may include information about your character, general reputation, personal characteristics, and/or mode of living. These reports may be obtained at any time after receipt of your authorization and, if you are hired, throughout your employment.

## ACKNOWLEDGMENT AND AUTHORIZATION

I acknowledge receipt of the DISCLOSURE REGARDING BACKGROUND INVESTIGATION and A SUMMARY OF YOUR RIGHTS UNDER THE FAIR CREDIT REPORTING ACT. I hereby authorize the obtaining and furnishing of "consumer reports" and/or "investigative consumer reports" at any time after receipt of this authorization and, if I am hired, throughout my employment. I also authorize Employer to share any consumer reports with companies to which Employer may assign me to work. To this end, I hereby authorize, without reservation, any law enforcement agency, administrator, local, state or federal agency, institution, school or university (public or private), information service bureau, employer, or insurance company to furnish any and all background information (including, but not limited to, driving and/or motor vehicle records, transcripts, grades and attendance records, employment history, salary information and references, workers compensation documents, records or reports in Pennsylvania, from the Industrial Commission of Arizona and in all other states, drug and alcohol testing results) requested by EBI acting on behalf of Employer, and/or Employer itself. If and when applicable, I also hereby authorize any past employers regulated by the U.S. Department of Transportation (49 CFR Part 40 and/or 49 CFR Part 391), to provide (a) work history information, and (b) drug and alcohol testing records from the previous three years, to EBI acting on behalf of Employer, and/or Employer itself. I agree that a facsimile ("fax") or photographic copy of this Authorization shall be as valid as the original.

You have the right, upon written request made within a reasonable time after receipt of this notice, to request disclosure of the nature and scope of any investigative consumer report or consumer report. For complete details pertaining to EBI's privacy practices, including whether your personal information will be sent outside of the U.S. or its territories, EBI's Privacy Policy can be viewed at: http://www.ebiinc.com/privacy-policy.html.

California, Minnesota and Oklahoma applicants or employees only: Please check the box if you would like to receive a copy of a consumer report if one is obtained by the Company. ☐

New York applicants or employees only: By signing below, you also acknowledge receipt of Article 23-A of the New York Corrections Law.

Company/Employer:     IMPERVA, INC.

Applicant Name:     JULIEN LUCIEN POINSIGNON

Applicant Signature:     _[signature]_     Date:     10/28/2015

# Exhibit B



800.324.7700  |  Contact  |  Client Login  |

WHY EBI
Screening Process Optimization
Smart Screening Technology
Industry-Leading Customer Care
Data Security & Compliance
Systems Integration

  Account Management

SERVICES
Background Screening
Social Security Number Trace
Credit Report Checks
Criminal Background Checks
Employment Verifications
Education Verifications
License Verifications
Reference Checks
Post-Hire Employee Monitoring
Driving Records

  Healthcare Sanctions
Drug Testing
Occupational Health Screening

  EBI-9

SOLUTIONS
Global
Enterprise
Small Business
Extended Workforce

  Industry Specific Solutions

Healthcare

Transportation

Retail

Education

Hospitality

Staffing

Volunteers & Non-Profits

SCREENING NEWS NETWORK

RESOURCES

Blog

Videos

Whitepapers

Webinars

FAQs

Glossary

Background Screening 101

COMPANY

Executive Team

Giving Back

Careers

Partners

Contact Us

Submit an RFP

Press

Request Demo

# EBI's Information Privacy Policy

PLEASE READ THIS IMPORTANT STATEMENT

# Terms of Use

Employment Background Investigations, Inc. (EBI) and its affiliates provide the content of the Web site subject to the following Terms, and these Terms may be revised at any time. By accessing and/or using the Site, the User acknowledges this disclaimer and agrees to be bound by the following terms and conditions:

All content and functionality on this Site, including text, graphics, logos, icons, and images and the selection and arrangement thereof, is the exclusive property of EBI and/or its licensors and is protected by US and international copyright laws. Rights not expressly granted are reserved.

EBI posts content on this Web site and in its newsletters which discuss legal and legislative developments. This content is purely informational and may not be construed as legal advice. Users must direct questions about legal issues and legislative developments to their legal counsel.

EBI makes no warranties or representations as to the accuracy or timeliness of information on this Site. Information on this Site may contain technical inaccuracies or typographical errors. EBI assumes no liability or responsibility for any errors or omissions in the content of the Site. EBI may change or update information without notice. EBI may make improvements and/or changes in the products and/or the programs described in this Site at any time without notice. Your use of this Site is at your own risk. Further, EBI makes no warranties or representations as to the accuracy or timeliness of any information on any third-party Sites that are linked to this Site.

This Web site may provide links to websites operated by its affiliates and third parties. EBI makes no representations whatsoever about any affiliate or third party websites that you may access through this Web site, and the fact that we have linked to another site should not be construed as an endorsement of that Site or its proprietor, except that an affiliate site is, in fact an affiliate of EBI. EBI is not responsible for the privacy practices, terms and conditions or the content of such Web sites. EBI prohibits (i) the framing of any materials available through this Web site, and (ii) "deep linking" to pages of the Web site other than the home page. EBI reserves the right to disable any unauthorized frames and specifically disclaims any responsibility for the contents of any other websites linked to this site.

YOU ARE SOLELY RESPONSIBLE FOR MAINTAINING THE CONFIDENTIALITY OF ANY PASSWORDS. You are responsible for all use of EBI Services and for the security of your login identification, your password and any security lock code that you use to protect access to your data, EBI personal profile, your file name(s) and files, network and user access.

Under no circumstances shall EBI be liable for any damages suffered by any User, including any incidental, special, exemplary or consequential damages (including, without limitation, any lost

profits or damages for business interpretation, loss of information, programs or other data) that result from access to, use of, or inability to use this site or due to any breach of security associated with the transmission of information through the internet, even if EBI was advised of the possibility of such damages. You agree to defend, indemnify, and hold EBI, its officers, directors, employees, agents, affiliates, licensors, and suppliers, harmless from and against any claims, actions or demands, liabilities and settlements including without limitation, reasonable legal and accounting fees, resulting from, or alleged to result from, your violation of these Terms of Use.

Unfortunately, no data transmission over the Internet or any wireless network can be guaranteed to be 100% secure. As a result, while we strive to protect your professional information, EBI can not ensure or warrant the security of any information you transmit to us or from our site, and you do so at your own risk. Once we receive your transmission, we make reasonable efforts to ensure its security on our systems.

These Terms are governed by the laws of the State of Maryland, and any dispute arising from these Terms shall be resolved exclusively in the State and Federal Courts of the State of Maryland.

These terms of use were last updated: September 18, 2016.

# "COOKIES" disclosure

EBI may obtain "cookies" from website visitors, which is a collection of anonymous information about website usage that will never contain personally identifiable information (PII). Cookies are a small file that will be sent to your computer that can contain information about your online visit and computer. The information we receive will be used for internal quality purposes, and will not be shared with a third party at any time. If you would like to turn off cookies, or receive a notification when cookies are going to be sent, please change your browser settings, however this may cause some pages on and features of our website to function improperly.

# Our Privacy Policy

Employment Background Investigations, Inc. (EBI) is committed to maintaining the confidentiality of your personal information in the global marketplace. EBI has established a data privacy policy which complies with the seven Privacy Shield principles administered by the United States Department of Commerce.

## Notice

EBI is a consumer reporting agency that collects personal data solely for the purposes of providing our clients with essential information required to make Fair Credit Reporting Act (FCRA) compliant screening decisions, and is subject to the investigatory and enforcement powers of the Federal Trade Commission (FTC), Consumer Financial Protection Bureau (CFPB) and the Department of Transportation (DOT). Information provided by an individual may include name, date of birth, Social Security Number, Motor Vehicle Operator's License Number, Professional License information, employment history, education and other subject information.

All data is collected, stored and delivered in compliance with applicable laws, including the Fair Credit Reporting Act (FCRA), European Union Data Protection Directive, Swiss Federal Act on Data Protection, and other local, state and federal laws, as well as all Privacy Shield Principles. EBI does not process personal information in a manner incompatible with the purposes for which it has been collected, however it may be required to disclose personal information in response to lawful requests by public authorities, including meeting national security or enforcement requirements. All individuals that are the subject of a consumer report procured by EBI have the right to access their personal data.

## Choice

Consumers may elect not to submit personal information to EBI if they do not want their personal data disclosed to our client, a third party, or to be used for a purpose that is materially different from the purpose for which it was originally collected or authorized. Consent forms either from EBI or the consumer's employer or potential employer indicate the consumer agrees to provide personally-identifying information (PII), and consent to EBI's use of that information. With regard to sensitive information, EU or Swiss residents are given an affirmative choice whether to disclose the information to a third party or if the information will be used in a manner inconsistent with the purposes for which it has been collected or subsequently authorized by the consumer through the exercise of opt-in choice. EBI will treat as sensitive any personal information received from a third party where the party has identified it and treated it as sensitive. In addition, under the US-Swiss Privacy Shield framework sensitive data also includes ideological views or activities, information on Social Security measures or administrative or criminal proceedings and sanctions, which are treated outside pending proceedings.

## Accountability for Onward Transfer

When transferring personal data to a third party acting as an agent, EBI will only (i) transfer data for limited and specified purposes consistent with the consent provided by the consumer, (ii) ascertain that the agent is obligated to provide at least the same level of privacy protection required by the Privacy Shield Principles, (iii) take reasonable and appropriate steps to ensure that the agent

effectively processes the personal information transferred in a manner consistent with EBI's obligations under the Privacy Shield Principles, (iv) require the agent to notify EBI if it makes a determination that it can no longer meet its obligation to provide the level of protection required and will take reasonable and appropriate steps to stop and remediate unauthorized processing at that time, and (v) will provide a summary or a representative copy of the relevant privacy provisions of its contract with that agent to the Department upon request.

## Security

EBI takes reasonable and appropriate precautions to protect personal information from loss, misuse and unauthorized access, disclosure, alteration and destruction. EBI takes into due account the risks involved in the processing and the nature of the personal data.

## Data Integrity and Purpose Limitation

Personal information obtained by EBI is relevant for the purposes of providing our clients with information required to make employment screening decisions. EBI takes reasonable steps to ensure that data is reliable for its intended use, accurate, complete, and current. The data obtained will be retained only for as long as it serves its relevant purpose for processing of the background screening report and correlated compliance and legal considerations. If any consumer believes any information in EBI's possession is inaccurate, they should contact EBI directly to discuss correcting, amending or deleting the incorrect information.

## Access

United States residents have the right to any consumer report produced or maintained by EBI once every twelve months. Information will be mailed via the United States Postal Service within seven days of the consumer's request. European Union or Switzerland residents may also contact EBI to request a copy of their consumer report. A fee no greater than $8 USD may be charged to cover delivery expenses, information will be forwarded within 30 days via standard delivery methods. Consumers may contact EBI to dispute any information that they believe is inaccurate or incomplete, and EBI will conduct a reinvestigation which may result in the information being corrected, amended or deleted when found to be inaccurate or processed in violation of the Privacy Shield Principles. There is an exception to the aforementioned reinvestigation when the burden or expense of providing access would be disproportionate to the consumer's privacy in the case in question, or where the rights of persons other than the consumer would be violated.

## Recourse, Enforcement, and Liability

EBI periodically verifies that this privacy policy is accurate, comprehensive, prominently displayed, completely implemented and accessible, as well as in compliance and conformity with all US-EU and US-Swiss Privacy Shield principles. EBI has responsibility for the processing of personal information it receives under the Privacy Shield and subsequently transfers to a third party acting on

our behalf. EBI shall remain liable under the Privacy Shield Principles if our agent processes this information in a manner inconsistent with the Principles, unless we can prove that we are not responsible for the event giving rise to the damage.

EU or Swiss consumers who feel that their privacy rights may have been violated should first contact EBI. In the event that EBI is not able to resolve the matter, EBI has committed to refer any unresolved privacy complaints under the US-EU and US-Swiss Privacy Shield principles to an independent recourse mechanism by which consumer complaints and disputes can be investigated and resolved at no cost to the individual. The independent recourse mechanism chosen will include verification that EBI's assertions regarding privacy practices are accurate, and remedying failure to comply with the principles.

EBI has designated the EU Data Protection Authorities (DPAs) and the Swiss Federal Data Protection and Information Commissioner (SFDPIC) as its independent recourse mechanism for dispute resolution. EBI will cooperate with the DPAs and the SFDPIC in the investigation and resolution of complaints brought under the US-EU or US-Swiss Privacy Shield. EBI will comply with any direction given by the DPAs and the SFDPIC, including any specific actions to ensure compliance with the principles. It is possible, under certain conditions, for the individual to invoke binding arbitration.

EBI and our independent recourse mechanism will respond promptly to inquiries and requests by the Department for information relating to the Privacy Shield, and to complaints regarding compliance with the Principles referred by EU Member State authorities. If EBI was subject to a Federal Trade Commission (FTC) or court order due to non-compliance, we will make public any relevant Privacy Shield related issues

The contact information for the EU Data Protection Authorities is available at: http://ec.europa.eu/justice/data-protection/bodies/authorities/third-countries/index_en.htm The contact information for the Swiss Federal Data Protection and Information Commissioner (SFDPIC) is available at: http://www.edoeb.admin.ch/

This Privacy Policy may be modified or amended at any time without prior notice. Please review this Privacy Policy prior to contacting EBI with requests or questions.

More information about the Privacy Shield Framework can be found at: https://www.privacyshield.gov

**Contact Information**
Attn: Compliance
Employment Background Investigations, Inc.
P.O. Box 629
Owings Mills, MD 21117
Telephone: (800) 324-7700

Facsimile: (410) 486-0731

compliance@ebiinc.com

BSCMP081 - v02 - 2017-05-08

Why EBI
Screening Process Optimization
Smart Screening Technology
Industry-Leading Customer Care
Data Security & Compliance
Systems Integration
Account Management

Services
Background Screening
Drug Testing
Occupational Health Screening
EBI-9

Solutions
Global
Enterprise
Small Business
Extended Workforce

Screening News Network

Resources
Blog
Videos
Whitepapers
Webinars
FAQs
Glossary
Background Screening 101

About Us
Executive Team
Giving Back
Careers
Partners
Press
Submit an RFP

Request A Demo



20 New Plant Court | Owings Mills   MD 21117    Support: 800-324-7700

Sales: 877.963.5508

Fact Act Notice  |  NAPBS Background Accreditation  |  ISO27001 & 9001 Certifications  |  Consumer Resources

Privacy Policy  |  Sitemap  |  PSC Locator  |  Login

© 2017 Employment Background Investigations, Inc. (EBI)

# Exhibit C



**IMPERVA**®

3400 Bridge Parkway
Redwood Shores, CA 94065
Tel: +1 (650) 345-9000
Fax: +1 (650) 240-0500
www.imperva.com

October 29, 2015

**Julien Poinsignon**
2510 Newlands Ave
Belmont, California 94002

Dear Julien:

Imperva, Inc. (the "Company") is pleased to offer you employment on the following terms:

1. **Position**. Your title will be **Sales Development Representative** and you will report to the Company's Director of Inside and Channel Sales, Josh Redner. This is a full-time position based out of our **headquarters in Redwood Shores**. By signing this letter agreement, you confirm to the Company that you have no contractual commitments or other legal obligations that would prohibit you from performing your duties for the Company.

2. **Cash Compensation**. The Company will pay you an hourly wage at the rate of **$38.47 per hour**, payable in accordance with the Company's standard payroll schedule. This salary will be subject to adjustment pursuant to the Company's employee compensation policies in effect from time to time. In addition, you will be eligible to participate in the Company's commission plan. Initially, your annual commission goal will be **$50,000 at target** and paid monthly. Commission will be awarded based on objectives or subjective criteria approved by the Company's Chief Executive Officer, and will be in accordance with the Company's then-current sales commission plan.

3. **Employee Benefits**. As a regular employee of the Company, you will be eligible to participate in a number of Company-sponsored benefits as in effect from time to time.

4. **Equity**. The Company shall, subject to the approval of its Board of Directors or a committee of the Board of Directors, grant to you (a) a stock option to purchase **90 shares** of Common Stock of the Company (the "Option") and (b) restricted stock units for **180 shares** of Common Stock of the Company (the "RSUs"). The Option and the RSUs will be granted pursuant to and will be subject to the terms of the Company's 2011 Stock Option and Incentive Plan, as well the Option Agreement and the Restricted Stock Unit Agreement.

*where is commission agreement*

---

5. **Proprietary Information and Inventions Agreement**. Like all Company employees, you will be required, as a condition of your employment with the Company, to sign the Company's standard Proprietary Information and Inventions Agreement, a copy of which is attached hereto as **Exhibit A**.

6. **Employment Relationship**. Employment with the Company is for no specific period of time. Your employment with the Company will be "at will," meaning that either you or the Company may terminate your employment at any time and for any reason, with or without cause. Any contrary representations that may have been made to you are superseded by this letter agreement. This is the full and complete agreement between you and the Company on this term. Although your job duties, title, reporting relationship, compensation and benefits, as well as the Company's personnel policies and procedures, may change from time to time, the "at will" nature of your employment may only be changed in an express written agreement signed by you and the Company's Chief Executive Officer.

7. **Outside Activities**. While you render services to the Company, you agree that you will not engage in any other employment, consulting or other business activity without the prior written consent of the Company. While you render services to the Company, you also will not assist any person or entity in competing with the Company, in preparing to compete with the Company or in hiring any employees or consultants of the Company.

8. **Withholding Taxes**. All forms of compensation referred to in this letter agreement are subject to reduction to reflect applicable withholding and payroll taxes and other deductions required by law.

9. **Proof of Employment Eligibility and Background Check**. This offer is contingent upon your completion and execution of all employment documents, as well as your ability to provide proof of identification and authorization to work in the United States (within two business days of your start date) and upon passing the Company's mandatory background verification, even if this information is not known until after your employment commences.

10. **Entire Agreement**. This Agreement and <u>Exhibit A</u> supersede and replace any prior agreements, representations or understandings (whether written, oral, implied or otherwise) between you and the Company and constitute the complete agreement between you and the Company regarding the subject matter set forth herein. This Agreement may not be amended or modified, except by an express written agreement signed by both you and the Chief Executive Officer of the Company.

\*\*\*\*\*\*\*\*\*\*

We hope that you will accept our offer to join the Company. You may indicate your agreement with these terms and accept this letter agreement by signing and dating both the enclosed duplicate original of this letter agreement and the enclosed Proprietary Information and Inventions Agreement and returning them to me. This offer, if not accepted, will expire at the close of business on **October 30, 2015**. Your employment is also contingent upon your starting work with the Company on or before Monday, ~~November 16, 2015~~.

November 9, 2015  T.S.

Very truly yours,
IMPERVA, INC.

By _Kristi Castellini_
Kristie Castellini

Title: Sr. Dir. Human Resources

Dated: ___10/29/2015___

I have read and accept this employment offer:

_Julie Poinsignon_
Signature of Julien Poinsignon

Dated: ___11/1/15___

Attachment

Exhibit A: Proprietary Information and Inventions Agreement

# Exhibit D

On Thu, Oct 29, 2015 at 2:21 PM, Taylor Smith <█████████@imperva.com> wrote:

> Hi Julien,
>
> Thank you I will go ahead and forward these to EBI.
>
> You should receive this additional information in an offer letter. After that if you have any questions please let me know.
>
> Taylor

---

**From:** Julien Poinsignon [mailto:████████████]
**Sent:** Thursday, October 29, 2015 2:00 PM
**To:** Taylor Smith <█████████@imperva.com>
**Subject:** Re: Background Check Questions

Oh sorry I got a little confused on the verification process but go ahead and contact ███████ ████ and ███ networks in order to verify my employment and such.

Give me a call at █████████ for any further questions. Additionally, I was wondering what the stock options, pto, and other benefits looked like in my package.

Best,

Julien

Sent from my iPhone

On Oct 29, 2015, at 1:50 PM, Taylor Smith ████████@imperva.com> wrote:

> Hi Julien,
>
>
> I wanted to touch base with you in regards to your background check. EBI has completed the verification but had some difficulty gathering information from the two employers you listed as you selected "do not contact." HR would like to be able to verify at least two pieces of recent employment history for a complete background check so I'm hoping you'll be able to provide some color as to why the "do not contact" selection was made for all three of these. If you're comfortable now, may HR allow EBI to reach out to these employers? Please let me know your thoughts and how you'd best like to proceed. Thanks!
>
>
> <image001.png>

