1   Shaun Setareh (SBN 204514)
          shaun@setarehlaw.com
2   H. Scott Leviant (SBN 200834)
          scott@setarehlaw.com
3   **SETAREH LAW GROUP**
    9454 Wilshire Boulevard, Suite 907
4   Beverly Hills, California  90212
    Telephone:      (310) 888-7771
5   Facsimile:      (310) 888-0109

6   Attorneys for Plaintiff
    JULIEN POINSIGNON

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11  JULIEN POINSIGNON, on behalf of himself,      Case No.: 3:17-cv-05653-EMC
    all others similarly situated,
12                                                 CLASS ACTION
              *Plaintiff*,
13                                                 **PLAINTIFF'S NOTICE OF MOTION AND**
         vs.                                       **MOTION FOR FINAL APPROVAL OF**
14                                                 **CLASS ACTION SETTLEMENT AND**
    IMPERVA, INC., a Delaware corporation; and     **CERTIFICATION OF SETTLEMENT**
15  DOES 1 through 100, inclusive,                 **CLASS; MEMORANDUM OF POINTS AND**
                                                   **AUTHORITIES IN SUPPORT THEREOF**
16            *Defendants*.

17                                                 Date:        February 7, 2019
18                                                 Time:        1:30 p.m.
                                                   Place.:      Courtroom 5
19                                                 Judge:       Hon. Edward M. Chen

20

21

22

23

24

25

26

27

28

1

2

TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................................... 1

II.    THE NOTICE PROCESS WAS SUCCESSFULLY COMPLETED AFTER PRELIMINARY

       APPROVAL .................................................................................................................. 2

III.   BACKGROUND ........................................................................................................... 3

IV.    SUMMARY OF SETTLEMENT TERMS ................................................................... 4

V.     THE SETTLEMENT MERITS FINAL APPROVAL ................................................. 5

       A.     Plaintiff's Claims Merit Class Action Treatment ........................................... 6

              1.     Numerosity ........................................................................................... 7

              2.     Commonality and Predominance of Common Issues ........................... 7

              3.     Typicality ............................................................................................. 8

              4.     Adequate Representation ...................................................................... 9

              5.     Superiority ............................................................................................ 9

       B.     The Settlement Falls Squarely Within the Range of Reasonableness and Should Be

              Finally Approved ........................................................................................... 11

              1.     The Value of the Settlement to Class Members Is Fair, Reasonable and

                     Adequate ............................................................................................. 12

              2.     The Agreed Upon Fees and Costs Are Reasonable ........................... 14

              3.     The Enhancement Award Is Reasonable ............................................ 14

              4.     The Costs of Administration Are Reasonable .................................... 15

VI.    CONCLUSION ............................................................................................................ 15

1

TABLE OF AUTHORITIES

2

3    **FEDERAL CASES**

4    *Acosta v. Trans Union LLC*, 243 F.R.D. 377 (C.D. Cal. 2007) ...................................................6

5    *Armstrong v. Board of School Directors of the City of Milwaukee*, 616 F.2d 305 (6th Cir. 1980) ...........6

6    *Baldwin & Flynn v. Nat'l. Safety Associates*, 149 F.R.D. 598 (N.D. Cal. 1993) .......................................7

7    *Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975) .........................................................................7, 8

8    *Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171 (9th cir. 1990) ..........................8

9    *Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152 (9th Cir. 2001) ................8, 10

10   *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ........................................................................6

11   *Elkins v. Equitable Life Ins. Of Iowa*, 1998 WL 133747 (M.D. Fla. 1998) .............................................10

12   *Hammon v. Barry*, 752 F.Supp 1087 (DDC 1990).........................................................................11

13   *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).....................................................6, 7, 8, 9

14   *Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992).........................................................9

15   *In re Armored Car Anti-Trust Litigation*, 472 F.Supp 1357 (ND GA 1979) ...........................................11

16   *In re Computer Memories Sec. Litig.*, 111 F.R.D. 675 (N.D. Cal. 1986)..............................................7

17   *In re Immune Response Securities Litigation*, 497 F.Supp.2d 1166 (S.D. Cal. 2007) ......................11, 12

18   *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270 (S.D. Ohio 1997)........................................14

19   *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685 (N.D. Ga. 2001)......................................................14, 15

20   *Lewis v. Gross*, 663 F.Supp. 1164 (E.D.N.Y. 1986) ....................................................................7

21   *Linney v. Cellular Alaska Partnership*, 1997 WL 450064 (N.D. Cal. 1997).....................................11, 12

22   *Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.*,

23       834 F.2d 677 (7th Cir. 1987)..............................................................................................11

24   *Officers for Justice v. Civil Service Commission of City and County of San Francisco*,

25       688 F.2d 615 (9th Cir. 1982) ..............................................................................................11

26   *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989).................................................14

27   *Pridd v. Edelman*, 883 F.2d 438 (6th Circuit 1989).................................................................................11

28   *Riordan v. Smith Barney*, 113 F.R.D. 60 (N.D. Ill. 1986)........................................................................7

*Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) ................................14

*Sommers v. Abraham Lincoln Federal Savings & Loan Association*, 79 F.R.D. 571 (ED PA 1978).....11

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ........................................................................6, 10, 11

*Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 688 (M.D. Fla. 2005) ....................................10

*Valentino v. Carter-Wallace*, 97 F.3d 1227 (9th Cir. 1996) ....................................................................10

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976)..................................................................5

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995)....................................................15

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ....................................................................14

*Wang v. Chinese Daily News*, 231 F.R.D. 602 (C.D. Cal. 2005) ..........................................................7, 8

*Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1188 (9th Cir. 2001) ................................................8

**RULES**

Fed. R. Civ. P. 23................................................................................................................................ passim

**TREATISES**

*Manual for Complex Litigation Second* § 30.44 (1985)...............................................................................6

**OTHER AUTHORITIES**

*Findings of the Study of California Class Action Litigation*, 2000-2006 ................................................14

1    **TO THE COURT, TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

2          Please take notice that on February 7, 2019, at 1:30 p.m., or as soon thereafter as counsel may be

3    heard, in the United States Courthouse, Courtroom 5, 17th Floor, 450 Golden Gate Avenue, San

4    Francisco, CA 94102, Plaintiff JULIEN POINSIGNON ("Plaintiff") will and hereby does move the Court

5    for an order granting final approval of the CLASS ACTION SETTLEMENT AGREEMENT

6    ("Agreement" or "Stipulation" herein) reached with Defendant Imperva, Inc. ("Defendant" or "Imperva"),

7    a true and correct copy of which is attached as Exhibit 1 to the Declaration of H. Scott Leviant submitted

8    herewith. Specifically, Plaintiff moves for an order to:

9          1.   grant approval of the terms of the Agreement as fair, reasonable and adequate under

10    Rule 23(e) of the Federal Rules of Civil Procedure, including the amount of the settlement; the

11    amount of distributions to class members; and the amounts allocated to the enhancement payments

12    and attorney's fees and costs;

13          2.   certify for settlement purposes the Settlement Class described in the Agreement as

14    follows: All applicants for employment, employees or other agents of Defendant in the United

15    States who were subject to any background, credit, consumer, or investigatory check or report

16    during the Class Period (the period from August 25, 2012 to November 3, 2017).

17          3.   appoint Plaintiff as representative for the Settlement Class;

18          4.   appoint Setareh Law Group as counsel for the Settlement Class;

19          5.   authorize distributions from the common fund; and,

20          6.   enter judgment on the terms specified in the Agreement and approved by the Court.

21          Plaintiff's motion is based on this Notice, the following Memorandum of Points and Authorities,

22    the Declaration of H. Scott Leviant and other Declarations submitted herewith, all other pleadings and

23    papers on file in this action, and any oral argument or other matter that may be considered by the Court.

24

25                          **MEMORANDUM OF POINTS AND AUTHORITIES**

26    **I.    INTRODUCTION**

27          Plaintiff Julien Poinsignon ("Plaintiff") filed a lawsuit on behalf of all applicants for employment,

28    employees or other agents of Defendant Imperva, Inc. ("Imperva" or "Defendant") in the United States

who were subject to any background, credit, consumer, or investigatory check or report.  Plaintiff asserted

claims arising under the Fair Credit Reporting Act ("FCRA") and related state law statutes.  Defendant

disputes these claims, denies liability, and has vigorously defended the action to date.

After discovery, the exchange of data, and mediation, Plaintiff and Defendant (Plaintiff and

Defendant collectively referred to herein as the "Parties") reached a proposed class action settlement

valued at $188,000 for 887 putative class members (the "Settlement").[1]  The Court granted preliminary

approval of the Settlement and authorized the issuance of Notice, which was completed as directed.  ***No

Settlement Class Member objected to any term of settlement and only 5 submitted valid requests for

exclusion***.

Both Parties believe the Settlement to be fair and reasonable, to adequately reflect the potential

liability, and to be the result of thorough factual and legal analyses and arms-length negotiations.  Through

this Motion, Plaintiff requests certification of a Settlement Class pursuant to Fed. R. Civ. P. 23 and

preliminary approval of the proposed class action settlement.

## II.  THE NOTICE PROCESS WAS SUCCESSFULLY COMPLETED AFTER PRELIMINARY APPROVAL

The Parties have fulfilled the class notice procedures set forth in the Court's Preliminary Approval

Order and the Class Members' responses have been overwhelmingly positive.  The claims administrator,

Simpluris, Inc. ("Claims Administrator" or "Simpluris"), sent individual notices to 887 Class Members on

October 19, 2018.  (Declaration of Jarrod Salinas ("Salinas Decl."), ¶ 7.)  The list of Class Members

utilized by Simpluris was prepared by (1) obtaining a list of Class Members from Defendant, and (2)

updating all addresses through the National Change of Address System.  (Salinas Decl., ¶¶ 5-6.)  Simpluris

mailed the Notice to 887 class members, based on the data described above.  (Salinas Decl., ¶¶ 4-7.)

Address traces were performed and updated addresses were obtained for 40 returned packets.  (Salias

---

[1] Plaintiff and Defendant also reached an agreement to settle a wage and hour class action that was filed at the same time Plaintiff filed this Lawsuit.  That matter is entitled *Julien Poinsignon v. Imperva, Inc.*, Case No. 17CIV03881, pending in the Superior Court of the State of California for the County of San Mateo.  Preliminary approval of that class settlement was granted by the Court overseeing that matter.

Decl., ¶ 8.)  Six Notices were undeliverable because current addresses could not be located even after using Accurint to search for current addresses.  (Salinas Decl., ¶ 8.)  The best Notice practicable was provided.

No Class Members have objected to the settlement.  (Salinas Decl., ¶ 10.)  Only five Class Members submitted valid requests for exclusion.  (Salinas Decl., ¶ 9.)  Simpluris's costs for administration will be $13,395.00.  (Salinas Decl., ¶ 12.)

## III.   BACKGROUND

On August 25, 2017, Plaintiff Julien Poinsignon ("Plaintiff") filed a lawsuit in California state court on behalf of all applicants for employment, employees or other agents of Defendant in the United States who were subject to any background, credit, consumer, or investigatory check or report. (Declaration of H. Scott Leviant ["Leviant Decl."], at ¶ 4.) The suit alleged violation of the FCRA and related state law consumer protection statutes.

Defendant removed the lawsuit to the Northern District of California on September 29, 2017. (Leviant Decl., at ¶ 5.)  Defendant filed a motion to dismiss the case, which was granted as to all claims, with leave to amend certain of them, by order dated April 9, 2018.  (Dkt. no. 34.)  Thereafter, Plaintiff filed an Amended Complaint on May 10, 2018, which alleged a single cause of action under the FCRA.

The Parties have conducted significant investigation of the facts and law during the prosecution of this Litigation. (Leviant Decl., at ¶ 6.)  Such investigation has included informal written discovery; the pre-mediation exchange of information; and, numerous communications between the Parties to identify and assess the issues. (Id.)  The Parties have further investigated the applicable law as applied to the facts discovered regarding the alleged claims of Plaintiff and potential defenses thereto, and the damages claimed by Plaintiff, including through the filing of a Motion to Dismiss, which clarified the single claim remaining at issue in the First Amended Complaint. (Id.)

The Parties mediated this matter before professional mediator Michael E. Dickstein, Esq. on June 4, 2018 in San Francisco, California. (Leviant Decl., at ¶ 7.)  At that mediation, the parties also mediated successfully a class action brought by Plaintiff against Imperva that is pending in San Mateo Superior Court before the Hon. Marie S. Weiner.  The terms of that class settlement will be presented to Judge

1   Weiner for her consideration and approval.  (*Id*.)

2          The Agreement is limited to the FCRA class action pending in Federal Court.  It is intended to

3   result in the creation of a settlement class comprised of all individuals who were applicants for

4   employment, employees or other agents of Imperva in the United States who were subject to any

5   background, credit, consumer, or investigatory check or report between August 25, 2012 and November 3,

6   2017. (Leviant Decl., at ¶ 8.) There are approximately 940 Settlement Class Members.  (*Id*.)

7          Solely for the purpose of settling this case, the parties agree that the requirements for establishing

8   class and collective action certification with respect to this class have been met and are met.  (Leviant

9   Decl., at ¶ 9.)  If this Settlement is not approved by the Court for any reason, Imperva reserves its rights to

10  contest class and/or collective action certification.  (*Id*.)  This Agreement, if approved by the Court, will

11  result in the termination with prejudice of the Litigation through the entry of the Judgment, and the release

12  of all Released Claims for all Class Members including all within the class definition who have not elected

13  to exclude themselves from the Settlement Class.  (*Id*.)

14

15  **IV.    SUMMARY OF SETTLEMENT TERMS**

16         The full terms of the settlement are set forth in the Agreement.  The primary material terms are as

17  follows:

18                 (a)     The Settlement Class is:  applicants for employment, employees or other agents of

19                         Defendant Imperva, Inc. in the United States who were subject to any background,

20                         credit, consumer, or investigatory check or report between August 25, 2012 and

21                         November 3, 2017.  (Agreement, ¶¶ 4 and 5.)

22                 (b)     Defendant agrees that $188,000.00, known as the "Maximum Settlement

23                         Amount," represents the maximum amount that it will pay out under this

24                         Agreement, inclusive of the following: (a) payments to participating Plaintiff

25                         Class Members; (b) the maximum gross amount for Class Counsel's attorneys'

26                         fees to be paid in accordance with the terms set forth in Paragraph 6(b), which is

27                         $62,660; (c) the maximum gross amount for all of Class Counsel's and the

28                         Class Representative's litigation costs and associated expenses, which is capped

at $10,000; (d) the anticipated gross amount for claims administration costs, which was anticipated to be roughly $10,000; and (e) the maximum gross amount for the enhancement payments to be made by Imperva to the Class Representative, in accordance with the terms set forth in Paragraph 10.4, which is a maximum $5,000. (Agreement, ¶ 6.)

(c)     Each Class Member who does not opt out will be paid their share of the settlement.  (Agreement, ¶¶ 8,9, 16.)

(d)     Class Counsel will not seek an amount greater than $62,660 for attorneys' fees. (Agreement, ¶ 6.)

(e)     Class Counsel will not seek an amount greater than $10,000 for litigation costs. (Agreement, ¶ 6.)

(f)     The Class Representative enhancement award requested will be $5,000. (Agreement, ¶ 6.)

(g)     If a Class Member has not cashed his or her check within 90 days of issuance, the funds representing the "uncashed checks" shall be transmitted by the Administrator to the *cy pres* to Legal Aid at Work, a California employment law public interest firm, or to another organization later selected by the parties if the Court declines to approve the *cy pres* organization selected by the parties. (Agreement, ¶ 16.)

(Leviant Decl., ¶ 11.)  A true and correct copy of the CLASS ACTION SETTLEMENT AGREEMENT is attached thereto as Exhibit "1."


V.     **THE SETTLEMENT MERITS FINAL APPROVAL**

The law favors settlement, particularly in class actions and other complex cases, where substantial resources can be conserved by avoiding the time, cost, and the rigors of formal litigation. *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).   These concerns apply in a case such as this, where allegedly wrongful practices potentially affected 887 employees, in relatively small amounts.

Any settlement of class litigation must be reviewed and approved by the court.  This is done in two

steps: (1) an early (preliminary) review by the court, and (2) a final review after notice has been distributed to the class for their comment or objections.  The *Manual for Complex Litigation Second* states at § 30.44 (1985):

> A two-step process is followed when considering class settlements … if the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that notice be given to the class members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement.

When parties reach a settlement agreement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Acosta v. Trans Union LLC*, 243 F.R.D. 377, 383 (C.D. Cal. 2007).

"The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval.'  This hearing is not a fairness hearing; its purpose, rather is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Armstrong v. Board of School Directors of the City of Milwaukee*, 616 F.2d 305, 314 (6th Cir. 1980) [quoting Manual for Complex Litigation s 1.46, at 53-55 (West 1977)]. "[T]he district court must assess whether a class exists," *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003), *i.e.*, whether the lawsuit qualifies as a class action under Rule 23.  *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (reviewing settlement to ensure compliance with requirements of Rule 23(a) and Rule 23(b)(3)).

At the second stage of the approval process, after class members have had an opportunity to object to the settlement, the court makes a final determination whether the settlement is "fair, reasonable and adequate" under Rule 23(e).  *Armstrong*, 616 F.2d at 314; *see Staton*, 327 F.3d at 952; *see also* Rule 23(e)(C)(1), which provides that a court may finally approve a settlement of a class action if it finds after a hearing that the settlement is "fair, reasonable, and adequate" and Rule 23(e)(C)(4), which provides that any class member may object to a proposed settlement.

### A.   Plaintiff's Claims Merit Class Action Treatment

In determining the propriety of class certification, a court may not delve into the underlying merits of the claims.  The fundamental question "is not whether . . . plaintiffs have stated a cause of action or will

prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974).

The Ninth Circuit has established that, when ruling on the propriety of class certification, a district court "is bound to take the substantive allegations of the complaint as true." *Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975). A court "may not require plaintiffs to make a preliminary proof of their claim; it requires only sufficient information to form a reasonable judgment." *Baldwin & Flynn v. Nat'l. Safety Associates*, 149 F.R.D. 598, 600 (N.D. Cal. 1993). Under these standards, this action meets the requirements for certification under Rule 23(a) and Rule 23(b)(3).

### 1.    Numerosity

Under Rule 23(a)(1), a class action may be maintained where "the class is so numerous that joinder of all members is impracticable." In determining whether joinder would be impracticable, a court may consider not only the sheer number of class members, *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986) (numbers alone may be dispositive), but also "the nature of the action, the size of the individual claims, [and] the inconvenience of trying individual suits." *Wang v. Chinese Daily News*, 231 F.R.D. 602, 606 (C.D. Cal. 2005). "A class action may proceed upon estimates as to the size of the proposed class." *Lewis v. Gross*, 663 F. Supp. 1164, 1169 (E.D.N.Y. 1986). *See also, In re Computer Memories Sec. Litig.*, 111 F.R.D. 675, 679 (N.D. Cal. 1986) (class certified where plaintiffs did not establish exact size, but demonstrated that class would "obviously be sufficiently numerous").

In this action, the Class is composed of 887 individuals (slightly fewer than the 940 initially projected). (Leviant Decl., ¶ 39; Salinas Decl., ¶ 5.) It is sufficiently numerous that the individual joinder of all members is impracticable.

### 2.    Commonality and Predominance of Common Issues

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." This commonality requirement is "construed permissively." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Plaintiff need not demonstrate that all questions of fact and law are common. "The existence of shared legal issues with divergent factual predicates is sufficient." *Id.* Where a class is united by a common interest in determining whether a defendant's broad course of conduct is actionable, commonality is not defeated "by slight differences in class members' positions." *Blackie,* 524 F.2d at 901

n.17.

In this litigation, all Class Members have shared a common interest in determining Imperva failed to comply with certain statutory requirements set forth in the FCRA relating to obtaining consent for background, credit, consumer, or similar investigatory checks.

Given the permissive standard that courts in the Ninth Circuit employ when determining commonality, certification of the Class for settlement purposes is appropriate as Rule 23(a)(2) is satisfied.

Once it is established that common issues of law or fact exist, for Rule 23(b)(3) purposes, the Court next examines whether those common issues predominate. The predominance inquiry focuses on whether the class is "sufficiently cohesive to warrant adjudication by representation." *Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001). Central to predominance is "the notion that the adjudication of common issues will help achieve judicial economy." *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1188, 1189 (9th Cir. 2001). When common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022. It is well settled that the need for determining differing amounts of damages suffered by different class members does not preclude class certification. *See*, *Blackie*, 524 F.2d at 905; *Wang*, 231 F.R.D. at 613.

There are common issues that may predominate over individual issues in this litigation. For example: (1) whether Defendant's disclosure was a "standalone" disclosure; (2) whether Defendant's disclosure was "clear and conspicuous"; (3) whether any violation was "wilful"; and (4) whether Defendant has any viable classwide defenses to the class claim. (Levaint Decl., ¶ 41.)

**3.     Typicality**

Rule 23(a)(3) requires that the representative plaintiff have claims "typical of the claims . . . of the class." This factor is also construed permissively. *See Hanlon*, 150 F.3d at 1019-20. Representative claims are typical "if they are reasonably co-extensive with those of absent class members; they need not be identical." *Id*. at 1020. In other words, named plaintiffs need not be "identically situated" with all other class members. "It is enough if their situations share a common issue of law or fact and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief." *Cal. Rural Legal Assistance,*

1    *Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990).

2         Typicality refers to the "nature of the claim . . . of the class representative, and not to the specific

3    facts from which it arose." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  The

4    typicality requirement is satisfied where "the named Plaintiffs raise the same Labor Code violations as

5    other putative class members." *Id.*  Here, Plaintiff is raising the same claims as the putative class members

6    and has alleged no other individual claims in this matter.  (Leviant Decl., ¶ 40.)

7                        **4.       Adequate Representation**

8         Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the

9    interests of the class."  Adequate representation turns on whether the named plaintiff and his counsel "have

10   any conflicts of interest with other class members," and whether the named plaintiff and his counsel will

11   "prosecute the action vigorously on behalf of the class."  Adequacy may be established by the mere fact

12   that counsel are experienced practitioners.  *Hanlon*, 150 F.3d at 1020.

13        There are no conflicts of interest between Plaintiff and Class Members, and Plaintiff has both

14   shown and expressed his willingness to represent Class Members.  The similarity of the claims asserted

15   and remedies sought by Class Members and Plaintiff do not suggest any divergent interests held by

16   Plaintiff.  Defendant did not assert unique defenses against Plaintiff that it could not assert against any

17   other Class Members.  Also, there are no conflicts with Plaintiff's counsel.

18        Plaintiff's counsel has substantial class action experience and can adequately represent the Class.

19   They have been appointed class counsel in many wage and hour and FCRA class actions against major

20   employers.  (Leviant Decl., ¶¶ 21-26.)

21                        **5.       Superiority**

22        In deciding whether to certify a class for settlement purposes, a court considers the following

23   factors to determine whether a class action is superior: (a) class members' interests in individually

24   controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation

25   concerning the controversy already commenced by or against members of the class; and (c) the desirability

26

27

28

or undesirability of concentrating the litigation of the claims in the particular forum.[2]  Some courts have

found that the third Rule 23(b)(3) factor is "conceptually irrelevant in the context of a settlement."  See

*Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005).  "With the settlement

in hand, the desirability of concentrating the litigation in one forum is obvious." *Elkins v. Equitable Life

Ins. Of Iowa*, 1998 WL 133747, at *19 (M.D. Fla. 1998).

To determine whether the superiority requirements of Rule 23(b)(3) are satisfied, a court compares

a class action with alternative methods for adjudicating the parties' claims.  Lack of a viable alternative to

a class action necessarily means that it satisfies the superiority requirement. *See Valentino v. Carter-

Wallace*, 97 F.3d 1227, 1235-36 (9th Cir. 1996) ("a class action is a superior method for managing

litigation if no realistic alternative exists").  "[I]f a comparable evaluation of other procedures reveals no

other realistic possibilities, [the] superiority portion of Rule 23(b)(3) has been satisfied."

*Culinary/Bartender Trust Fund*, 244 F.3d at 1163.  In *Culinary/ Bartender Trust Fund*, the Ninth Circuit

held that the "case involve[d] multiple claims for relatively small sums" and that the class action clearly

served as the only method that would "'permit the plaintiffs to pool claims which would be uneconomical

to litigate individually.'"  *Id.* at 1163.

The class action is superior here as it is on the only method that will allow Class Members "to pool

[their individual] claims which would be uneconomical to litigate individually." *Id.*

The factors articulated in Rule 23(b)(3)(A), (B) and (C) also favor class certification.  It is difficult

to believe that any Class Members have an interest in individually controlling the prosecution of separate

actions, given the relatively small sums involved for any one Class Member.  Any Class Member who

wants to pursue a separate action can opt out of the Settlement.

Also, it is desirable to concentrate issues in one forum.  The Settlement allows all individuals to

resolve similar claims against Defendant through a process that does not even require a claim form.

---

**2** Rule 23(b)(3)(A)-(C). When a court reviews a class action settlement, it does *not* consider Rule 23(b)(3)(D), the fourth factor, regarding difficulties of managing a class action. *Amchem Products Inc. v. Woodward* (1997) 521 U.S. 591, 620 (in deciding whether to certify a class for settlement purposes, a district court "need not inquire whether the case, if tried, would present intractable management problems").

1

2

**B.** <u>**The Settlement Falls Squarely Within the Range of Reasonableness and Should Be**</u>

<u>**Finally Approved**</u>

3

4

5

6

7

8

9

No single criterion determines whether a class action settlement meets the requirements of Rule 23(e).  The Ninth Circuit has directed district courts to consider a variety of factors without providing an "exhaustive list" or suggesting which factors are most important.  *See, Staton*, 327 F.3d at 959.  "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case."  *Officers for Justice v. Civil Service Commission of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

10

11

12

13

Due to the impossibility of predicting any litigation result with certainty, a district court's evaluation of a settlement essentially amounts to "'an amalgam of delicate balancing, gross approximations and rough justice.'"  *Id.* at 625.  The ultimate touchstone, however, is whether "class counsel adequately pursued the interests of the class as a whole."  *Staton*, 327 F.3d at 961.

14

15

16

17

18

19

20

As the Ninth Circuit explained in *Officers for Justice*, the district court's role in evaluating a class action settlement is therefore tailored to meet that narrow objective.  *Officers for Justice*, 688 F.2d at 625.  Review under Rule 23(e) "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties."  *Id.*  Accordingly, the Ninth Circuit will not reverse a district court's approval of a class action settlement "unless the fees and relief provisions clearly suggest the possibility that class interests gave way to self interest."  *Staton*, 327 F.3d at 961.

21

22

23

24

25

26

27

28

There is a presumption that the negotiations were conducted in good faith.  Newberg, §11.51; *Pridd v. Edelman*, 883 F.2d 438, 447 (6th Circuit 1989); *Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.*, 834 F.2d 677, 682 (7th Cir. 1987).  Courts do not substitute their judgment for that of the proponents, particularly where, as here, settlement has been reached with the participation of experienced counsel familiar with the litigation.  *Hammon v. Barry*, 752 F. Supp. 1087 (D.D.C. 1990); *In re Armored Car Anti-Trust Litigation*, 472 F. Supp. 1357 (N.D. GA 1979); *Sommers v. Abraham Lincoln Federal Savings & Loan Association*, 79 F.R.D. 571 (E.D. PA 1978).  The fact that settlement results from arms-length negotiations following "relevant discovery" creates "a presumption that the agreement is fair."

*Linney v. Cellular Alaska Partnership*, 1997 WL 450064, *5 (N.D. Cal. 1997); *See In re Immune Response Securities Litigation*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (settlement approved where informal discovery gave the parties a clear view of the strength and weaknesses of their cases).

Here, the Parties reached a non-collusive settlement after exchange of information about the nature and notice for any credit or other reports, data production about the number and timing of such reports, and extended negotiations.  The settlement was finally reached after a day of arm's length negotiations before Michael Dickstein, a highly-respected mediator skilled at helping parties attempting to negotiate reasonable settlements in employment-related class actions.  Prevailing at trial presented risk for the class that justified the settlement.  The Agreement falls well within the range of reasonable outcomes and merits approval under Rule 23(e).  (Leviant Decl., ¶¶ 7-8, 10, 12-19.)

### 1.    The Value of the Settlement to Class Members Is Fair, Reasonable and Adequate

The Parties reached a Settlement in good faith after negotiating at arm's length with a professional mediator.  (Leviant Decl., ¶ 7.)  Settlement occurred only after the relevant information was shared prior to mediation (including the content of the notice of credit and other reports and the number of class members subject to them).  The information exchanged was sufficient to permit Plaintiff's counsel to adequately evaluate the settlement. And, notably, approval of a class action settlement does not require that discovery be formal or exhaustive. *See*, *e.g.*, *In re Immune Response Securities Litigation*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (settlement approved where informal discovery gave the parties a clear view of the strength and weaknesses of their cases).  The fact that settlement results from arms length negotiations following "relevant discovery" creates "a presumption that the agreement is fair." *Linney v. Cellular Alaska Partnership*, 1997 WL 450064, at *5 (N.D. Cal. 1997).

With respect to the claim asserted on behalf of the Settlement Class in this case, there unquantifiable risks that justify a settlement in an amount above the minimum statutory recovery for an FCRA matter. These risks include, but are not limited to: (i) the risk that Plaintiff would be unable to establish liability, including that the Plaintiff could not establish willful violation of the FCRA, which was a requirement for Plaintiff's claims after the motion to dismiss was granted; (ii) the risk that Defendant's challenged employment policies might not ultimately support class certification or a class-wide liability

finding; (iii) the risk that uncertainties pertaining to the ultimate legality of Defendant's form could preclude recovery or class-wide awards of statutory penalties; (iv) the risk that individual differences between Settlement Class Members could be construed as pertaining to liability, and not solely to damages; (v) the risk that any civil penalties awarded under the FCRA for the improper notice alleged in this case could be set by the Court in its discretion at the minimum amount recoverable, which was $100 per individual proving a violation; and (vi) the risk that lengthy trial or appellate litigation could ensue over any of the above issues.  Defendant strongly denies any liability and the propriety of class certification for any reason other than settlement.  (Leviant Decl., ¶¶ 15.)  Continued litigation of this lawsuit presented Plaintiff and Defendant with substantial legal risks that were (and continue to be) very difficult to assess.

In light of the uncertainties of protracted litigation, the settlement amount reflects a fair and reasonable recovery for the Settlement Class Members.  (Leviant Decl. ¶¶ 12-19.)  The settlement amount is, of course, a compromise figure.  (Leviant Decl. ¶ 16.)  By necessity it took into account risks related to liability, damages, and all the defenses asserted by the Defendant.  (*Id*.)  Moreover, each Settlement Class Member will be given the opportunity to opt out of the Settlement, allowing those who feel they have claims that are greater than the benefits they can receive under this Settlement, to pursue their own claims.  (*Id*.)  For the 887 members of the Class, the average *gross* recovery before deductions for taxes, fees, and other costs, is approximately $211 per class member.  (Leviant Decl., ¶ 16.)  The value of this amount falls well within the range of reasonableness, as the statutory penalty available ranges from $100 to $1,000.  This is not an inconsequential sum obtained in settlement.  (*Id*.)

The Class Settlement Amount is fully consistent with any risk at this stage in the litigation.  While Plaintiff would certainly have preferred to recover even more (and Defendant would have preferred to pay far less or zero), this outcome is in line with a carefully constructed estimate of the current fair value of the case.  (Leviant Decl., ¶ 17.)  On that basis, it would be unwise to pass up this settlement opportunity.  Again, the settlement amount falls *within* the statutory damages range, not below it.  (*Id*.)

After analyzing the claims in this matter, Plaintiff has concluded that the value of this Settlement is fair, adequate and reasonable, given that it is difficult to ascribe any of the worst motivations to Defendant that would justify a higher statutory penalty.  (Leviant Decl., ¶ 18.)

Considering the statutory framework and risks, this result here is fully supportable as reasonable. (Leviant Decl., ¶ 19.) Certification rates are lower than conventional wisdom holds.  *See*, *e.g*., H. Scott Leviant, *Second Interim Report on class actions in California sheds new light on certification* (February 19, 2010), www.thecomplexlitigator.com, available at http://www.thecomplexlitigator.com/post-data/2010/2/19/second-interim-report-on-class-actions-in-california-sheds-n.html; *see also*, *Findings of the Study of California Class Action Litigation*, 2000-2006, available at http://www.courtinfo.ca.gov/reference/documents/class-action-lit-study.pdf (finding, as part of a study conducted by the Judicial Council of California, at page 5, and in Table 9, at page 15, that only 21.4% of all class actions were certified either as part of a settlement *or* as part of a contested certification motion).

By obtaining reasonable value for the claim in light of the risks of litigation, Plaintiff clearly achieved a fair settlement that merits approval.

**2.     The Agreed Upon Fees and Costs Are Reasonable**

While a separate Motion addresses Plaintiff's requests for attorney's fees, costs, and an enhancement award, Plaintiff briefly addresses the reasonableness of the amounts below.

The compensation sought for Plaintiff's counsel is also fair and reasonable.  The Ninth Circuit has directed that, to determine what constitutes a fair and reasonable percentage of the settlement for purposes of calculating common fund attorneys' fees, the courts should begin with a "benchmark" percentage of the total fund.  *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1047 (9th Cir. 2002); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).  The percentage can be adjusted upwards where the risks overcome, the benefits obtained and the work necessary to achieve those results supports such a modest adjustment of the benchmark.

Here, the Maximum Settlement Amount is $188,000.00.  Plaintiff's counsel has agreed to seek no more than $62,660 in fees, which is appropriate in light of the quality of the result and the benchmark standard.  (Leviant Decl., ¶ 10.)  Plaintiff's counsel also requests actual costs incurred and paid without reimbursement in the litigation of this Action, not to exceed $10,000.00.

**3.     The Enhancement Award Is Reasonable**

Enhancement awards serve to reward the named plaintiff for the time and effort expended on

behalf of the class, and for exposing herself to the significant risks of litigation. "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001); *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997).  In *Coca-Cola*, for example, the court approved incentive awards of $300,000 to each named plaintiff in recognition of the services they provided to the class by responding to discovery, participating in the mediation process and taking the risk of stepping forward on behalf of the class. *Coca-Cola*, 200 F.R.D. at 694; *see also Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000 award).

Here, Plaintiff's counsel requests that the Court grant Plaintiff an incentive award of $5,000.  The amount of the enhancement award is reasonable given the risks undertaken by Plaintiff.  Taking the risk of filing a lawsuit against an employer deserves reward.  Additionally, Plaintiff was actively involved in the litigation and settlement negotiations of this Action, including travelling to San Francisco and participating in the day-long mediation.  (Poinsignon Decl., ¶ 8.)  Plaintiff worked diligently with counsel to prepare the action and conferred with counsel regarding settlement negotiations.  (Leviant Decl., ¶ 32; Poinsignon Decl., ¶¶ 6-9.) The requested amount is reasonable.

### 4.   The Costs of Administration Are Reasonable

Simpluris, Inc., an experienced third-party administrator, was appointed to administer the notice and settlement distributions in this matter.  (Salinas Decl., ¶¶ 2-3.)  Performing in all respects as required by the Agreement to date, the final cost of administration, including future work, is $13,395.00. (Salinas Decl.,¶ 12.)  Administration of this Settlement for 887 Class Members occurred with any issues.  (Leviant Decl., ¶ 48.)  Simpluris, Inc. will continue to perform services for the Settlement Class Members when it completes the calculation and distribution of payments made under the Settlement.  Plaintiff therefor requests approval of a distribution to Simpluris, Inc. of $13,395.00 as its fee for third-party administration services.

## VI.   CONCLUSION

Plaintiff negotiated a settlement that resolves claims and recovers money for approximately 887 Settlement Class Members.  This settlement is fair and reasonable, especially given the claims and the

1   potential defenses to them and to class certification.  Plaintiff asks the Court to grant final approval of the

2   settlement and adopt the proposed order submitted herewith.

3

4                                                     Respectfully submitted,

5   Dated: January 2, 2019                            **SETAREH LAW GROUP**

6

7                                           By: _____
                                                      Shaun Setareh
8                                                     H. Scott Leviant

9                                                     Attorneys for Plaintiff

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28