Shaun Setareh (SBN 204514)
    shaun@setarehlaw.com
H. Scott Leviant (SBN 200834)
    scott@setarehlaw.com
**SETAREH LAW GROUP**
9454 Wilshire Boulevard, Suite 907
Beverly Hills, California  90212
Telephone:      (310) 888-7771
Facsimile:      (310) 888-0109

Attorneys for Plaintiff
JULIEN POINSIGNON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIEN POINSIGNON, on behalf of himself, all others similarly situated,<br><br>_Plaintiff,_<br><br>vs.<br><br>IMPERVA, INC., a Delaware corporation; and DOES 1 through 100, inclusive,<br><br>_Defendants._ | Case No.: 3:17-cv-05653-EMC<br><br><u>CLASS ACTION</u><br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEY'S FEES TO CLASS COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:         February 7, 2019<br>Time:        1:30 p.m.<br>Place.:       Courtroom 5<br>Judge:       Hon. Edward M. Chen |

TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................... 1

II.   BACKGROUND ....................................................................................................... 2

III.  SUMMARY OF SETTLEMENT TERMS ............................................................... 3

IV.   DISCUSSION ........................................................................................................... 4

      A.   The Legal Standard for Attorneys' Fee Awards ........................................... 4

      B.   The Fee Award Is Reasonable and Should Receive Final Approval ............ 5

           1.   A Reasonable Result Was Achieved on Behalf of the Class .............. 5

           2.   The Experience, Reputation, and Ability of Class Counsel ................ 7

           3.   The Effort Required by the Litigation Justifies the Fee ...................... 7

           4.   Class Counsel Was Precluded from Other Employment ..................... 8

           5.   The Complexity of the Legal and Factual Issues ................................ 8

           6.   Class Counsel Assumed Substantial Risk ........................................... 8

           7.   The Fee is Reasonable Under the Common Fund Doctrine ................ 8

                a)   The standard fee award in class actions has, over time, resolved itself as
                     one-third of the recovery in common fund cases. ...................................... 9

                b)   Plaintiff seek one-third of the Settlement Fund in fees. ........................... 10

                c)   Courts in this District Recognize That Fee Awards in Class Actions
                     Frequently Exceed the Ninth Circuit Benchmark ..................................... 10

           8.   A Lodestar Analysis Supports the Requested Fee ............................. 11

                a)   Stetson Risk Factors Support an Award of the Requested Fee ................ 13

                     (1)   Setareh Law Group took this "case with the expectation that they
                           [would] receive a risk enhancement if they prevail[ed]." ................... 14

                     (2)   The hourly rates of Setareh Law Group attorney are set in line with
                           market hourly rates for hourly work, using the Adjusted Laffey Matrix,
                           and those rates do not reflect the risk of nonpayment ......................... 15

                     (3)   There is "evidence that the case was risky." ....................................... 15

b) Kerr Factors.............................................................................................. 16

c) The "Negative" Multiplier Here Would Fall Well Below the Range of

Common Lodestar Multipliers ................................................................... 16

V.   CONCLUSION........................................................................................................17

TABLE OF AUTHORITIES

**FEDERAL CASES**

*American Eagle Ins. Co. v. King Resources Co.*, 556 F.2d 471 (10th Cir. 1977) .....................................7

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) .........................................................................9

*Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997 (9th Cir. 2002).........................................13

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).................................................................9

*In re Activision Sec. Litig.*, 723 F. Supp. 1373 (N.D. Cal. 1989)......................................................9

*In re Activision Securities Litigation*, 723 F. Supp. 1373 (N.D. Cal 1989)...........................................12

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ...........................................16

*In re Heritage Bond Litig.*, 2005 U.S Dist. LEXIS 13555 (C.D. Cal. June 10, 2005).............................7

*In re Public Serv. Co.*, 1992 U.S. Dist. LEXIS 16326 (S. D. Cal. July 28, 1992) ..................................8

*In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491 (W.D. Pa. 2003) ......................................................7

*Kerr v. Screen Extras Guild, Inc., 526 F.2d 67 (9th Cir. 1975)*.......................................................16

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989)..........................................9, 13

*Reynolds v. National Football League*, 584 F.2d 280 (8th Cir. 1978) ................................................7

*Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) .................................9

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ...................................................... passim


**CALIFORNIA CASES**

*7-Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal. App. 4th 1135 (2000) ....................8

*Bihun v. AT&T Information System*, 13 Cal. App. 4th 976 (1993)......................................................12

*Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43 (2008)...................................................................10

*Cundiff v. Verizon California*, 167 Cal. App. 4th 718 (2008)..........................................................11

*Flannery v. California Highway Patrol*, 61 Cal. App. 4th 629 (1995)..................................................8

*Ketchum v. Moses*, 24 Cal. 4th 1122 (2001).............................................................................9

*Serrano v. Priest*, 20 Cal. 3d 25 (1977) .........................................................................5, 8, 9, 12

*Wershba v. Apple Computer*, 91 Cal. App. 4th 224 (2001) ............................................................9

**RULES**

Fed. R. Civ. P. 23.........................................................................................................................................1

**TREATISES**

7 Witkin, B.E., CALIFORNIA PROCEDURE (2007 Supp.) §§ 255-261 ........................................................9

Herr, MANUAL FOR COMPLEX LITIGATION, FOURTH, § 21.71 (2008)........................................................5

**OTHER AUTHORITIES**

*Findings of the Study of California Class Action Litigation*, 2000-2006 ..................................................7

**TO THE COURT, TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

Please take notice that on February 7, 2019, at 1:30 p.m., or as soon thereafter as counsel may be heard, in the United States Courthouse, Courtroom 5, 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff JULIEN POINSIGNON ("Plaintiff") will and hereby does move the Court for an order awarding fees and costs to Class Counsel.

Plaintiff's motion is based on this Notice, the following Memorandum of Points and Authorities, the Declaration of H. Scott Leviant submitted herewith, all other pleadings and papers on file in this action, and any oral argument or other matter that may be considered by the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Julien Poinsignon ("Plaintiff") filed a lawsuit on behalf of all applicants for employment, employees or other agents of Defendant Imperva, Inc. ("Imperva" or "Defendant") in the United States who were subject to any background, credit, consumer, or investigatory check or report.  Plaintiff asserted claims arising under the Fair Credit Reporting Act ("FCRA") and related state law statutes.  Defendant disputes these claims, denies liability, and has vigorously defended the action to date.

After discovery, the exchange of data, and mediation, Plaintiff and Defendant (Plaintiff and Defendant collectively referred to herein as the "Parties") reached a proposed class action settlement valued at $188,000 for 887 putative class members.[1]  The Court granted preliminary approval of the Settlement and authorized the issuance of Notice, which was completed as directed.  ***No Settlement Class Member objected to any term of settlement and only 5 submitted valid requests for exclusion***.

Both Parties believe the Settlement to be fair and reasonable, to adequately reflect the potential liability, and to be the result of thorough factual and legal analyses and arms-length negotiations.  Through this Motion, Plaintiff requests an award of attorney's fees (which incorporates any costs) to Class Counsel

---

[1] Plaintiff and Defendant also reached an agreement to settle a wage and hour class action that was filed at the same time Plaintiff filed this Lawsuit.  That matter is entitled *Julien Poinsignon v. Imperva, Inc.*, Case No. 17CIV03881, pending in the Superior Court of the State of California for the County of San Mateo.  Preliminary approval of that class settlement was granted by the Court overseeing that matter.

and an enhancement award to Plaintiff.  On a percentage or lodestar basis, the fee award sought by this Motion is within the range of reasonableness.  The costs incurred were only those costs necessary to successfully resolve this matter.

## II.   **BACKGROUND**

On August 25, 2017, Plaintiff Julien Poinsignon ("Plaintiff") filed a lawsuit in California state court on behalf of all applicants for employment, employees or other agents of Defendant in the United States who were subject to any background, credit, consumer, or investigatory check or report. (Declaration of H. Scott Leviant ["Leviant Decl."], at ¶ 4.) The suit alleged violation of the FCRA and related state law consumer protection statutes.

Defendant removed the lawsuit to the Northern District of California on September 29, 2017. (Leviant Decl., at ¶ 5.)  Defendant filed a motion to dismiss the case, which was granted as to all claims, with leave to amend certain of them, by order dated April 9, 2018.  (Dkt. no. 34.)  Thereafter, Plaintiff filed an Amended Complaint on May 10, 2018, which alleged a single cause of action under the FCRA.

The Parties have conducted significant investigation of the facts and law during the prosecution of this Litigation. (Leviant Decl., at ¶ 6.)  Such investigation has included informal written discovery; the pre-mediation exchange of information; and, numerous communications between the Parties to identify and assess the issues. (*Id.*)  The Parties have further investigated the applicable law as applied to the facts discovered regarding the alleged claims of Plaintiff and potential defenses thereto, and the damages claimed by Plaintiff, including through the filing of a Motion to Dismiss, which clarified the single claim remaining at issue in the First Amended Complaint. (*Id.*)

The Parties mediated this matter before professional mediator Michael E. Dickstein, Esq. on June 4, 2018 in San Francisco, California. (Leviant Decl., at ¶ 7.)  At that mediation, the parties also mediated successfully a class action brought by Plaintiff against Imperva that is pending in San Mateo Superior Court before the Hon. Marie S. Weiner.  The terms of that class settlement will be presented to Judge Weiner for her consideration and approval.  (*Id.*)

The Agreement is limited to the FCRA class action pending in Federal Court.  It is intended to result in the creation of a settlement class comprised of all individuals who were applicants for

employment, employees or other agents of Imperva in the United States who were subject to any

background, credit, consumer, or investigatory check or report between August 25, 2012 and November 3,

2017. (Leviant Decl., at ¶ 8.) There are approximately 940 Settlement Class Members. (*Id.*)

Solely for the purpose of settling this case, the parties agree that the requirements for establishing

class and collective action certification with respect to this class have been met and are met. (Leviant

Decl., at ¶ 9.) If this Settlement is not approved by the Court for any reason, Imperva reserves its rights to

contest class and/or collective action certification. (*Id.*) This Agreement, if approved by the Court, will

result in the termination with prejudice of the Litigation through the entry of the Judgment, and the release

of all Released Claims for all Class Members including all within the class definition who have not elected

to exclude themselves from the Settlement Class. (*Id.*)

## III.   SUMMARY OF SETTLEMENT TERMS

The full terms of the settlement are set forth in the Agreement.  The primary material terms are as

follows:

(a)   The Settlement Class is:  applicants for employment, employees or other agents of

Defendant Imperva, Inc. in the United States who were subject to any background,

credit, consumer, or investigatory check or report between August 25, 2012 and

November 3, 2017.  (Agreement, ¶¶ 4 and 5.)

(b)   Defendant agrees that $188,000.00, known as the "Maximum Settlement

Amount," represents the maximum amount that it will pay out under this

Agreement, inclusive of the following: (a) payments to participating Plaintiff

Class Members; (b) the maximum gross amount for Class Counsel's attorneys'

fees to be paid in accordance with the terms set forth in Paragraph 6(b), which is

$62,660; (c) the maximum gross amount for all of Class Counsel's and the

Class Representative's litigation costs and associated expenses, which is capped

at $10,000; (d) the anticipated gross amount for claims administration costs,

which was anticipated to be roughly $10,000; and (e) the maximum gross

amount for the enhancement payments to be made by Imperva to the Class

Representative, in accordance with the terms set forth in Paragraph 10.4, which is a maximum $5,000. (Agreement, ¶ 6.)

(c)  Each Class Member who does not opt out will be paid their share of the settlement.  (Agreement, ¶¶ 8,9, 16.)

(d)  Class Counsel will not seek an amount greater than $62,660 for attorneys' fees. (Agreement, ¶ 6.)

(e)  Class Counsel will not seek an amount greater than $10,000 for litigation costs. (Agreement, ¶ 6.)

(f)  The Class Representative enhancement award requested will be $5,000. (Agreement, ¶ 6.)

(g)  If a Class Member has not cashed his or her check within 90 days of issuance, the funds representing the "uncashed checks" shall be transmitted by the Administrator to the *cy pres* to Legal Aid at Work, a California employment law public interest firm, or to another organization later selected by the parties if the Court declines to approve the *cy pres* organization selected by the parties. (Agreement, ¶ 16.)

(Leviant Decl., ¶ 11.)  A true and correct copy of the CLASS ACTION SETTLEMENT AGREEMENT is attached thereto as Exhibit "1."

## IV.  DISCUSSION

### A.  The Legal Standard for Attorneys' Fee Awards

California and the Ninth Circuit, and all federal courts, for that matter, use similar criteria to assess a fee request attendant to a motion for final approval, including: (i) the results achieved on behalf of the class; (ii) class counsel's experience, reputation and ability; (iii) the time and labor required by the litigation; (iv) whether class counsel was precluded from other work; (v) the complexity of the litigation; and (vii) the contingent nature of the litigation.  *See Serrano v. Priest*, 20 Cal. 3d 25, 49 (1977); *accord Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002) (identifying similar criteria); *see also* Herr, Manual for Complex Litigation, Fourth, § 21.71 at 524-27 (2008) (survey of federal criteria

1  similar to California criteria).

2

3  **B.     The Fee Award Is Reasonable and Should Receive Final Approval**

4       **1.     A Reasonable Result Was Achieved on Behalf of the Class**

5       The benefit achieved on behalf of class members defines a primary yardstick against which any fee

6  motion is measured.  *See Serrano*, 20 Cal. 3d at 49; *accord Vizcaino*, 290 F.3d at 1048.

7       The Parties reached a Settlement in good faith after negotiating at arm's length with a professional

8  mediator.  (Leviant Decl., ¶ 7.)  Settlement occurred only after the relevant information was shared prior to

9  mediation (including the content of the notice of credit and other reports and the number of class members

10  subject to them).  And, notably, approval of a class action settlement does not require that discovery be

11  exhaustive.  *See*, *e.g.*, *In re Immune Response Securities Litigation*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal.

12  2007) (settlement approved where informal discovery gave the parties a clear view of the strength and

13  weaknesses of their cases).  The fact that settlement results from arm's length negotiations following

14  "relevant discovery" creates "a presumption that the agreement is fair."  *Linney v. Cellular Alaska*

15  *Partnership*, 1997 WL 450064, at *5 (N.D. Cal. 1997).

16       With respect to the claim asserted on behalf of the Settlement Class in this case, there

17  unquantifiable risks that justify a settlement in an amount above the minimum statutory recovery for an

18  FCRA matter. These risks include, but are not limited to: (i) the risk that Plaintiff would be unable to

19  establish liability, including that the Plaintiff could not establish willful violation of the FCRA, which was

20  a requirement for Plaintiff's claims after the motion to dismiss was granted; (ii) the risk that Defendant's

21  challenged employment policies might not ultimately support class certification or a class-wide liability

22  finding; (iii) the risk that uncertainties pertaining to the ultimate legality of Defendant's form could

23  preclude recovery or class-wide awards of statutory penalties; (iv) the risk that individual differences

24  between Settlement Class Members could be construed as pertaining to liability, and not solely to

25  damages; (v) the risk that any civil penalties awarded under the FCRA for the improper notice alleged in

26  this case could be set by the Court in its discretion at the minimum amount recoverable, which was $100

27  per individual proving a violation; and (vi) the risk that lengthy trial or appellate litigation could ensue

28  over any of the above issues.  Defendant strongly denies any liability and the propriety of class

certification for any reason other than settlement.  (Leviant Decl., ¶¶ 15.)  Continued litigation of this lawsuit presented Plaintiff and Defendant with substantial legal risks that were (and continue to be) very difficult to assess.

In light of the uncertainties of protracted litigation, the settlement amount reflects a fair and reasonable recovery for the Settlement Class Members.  (Leviant Decl. ¶¶ 12-19.)  The settlement amount is, of course, a compromise figure.  (Leviant Decl. ¶ 16.)  By necessity it took into account risks related to liability, damages, and all the defenses asserted by the Defendant.  (*Id*.)  Moreover, each Settlement Class Member will be given the opportunity to opt out of the Settlement, allowing those who feel they have claims that are greater than the benefits they can receive under this Settlement, to pursue their own claims.  (*Id*.)  For the 887 members of the Class, the average *gross* recovery before deductions for taxes, fees, and other costs, is approximately $211 per class member.  (Leviant Decl., ¶ 16.)  The value of this amount falls well within the range of reasonableness, as the statutory penalty available ranges from $100 to $1,000.  This is not an inconsequential sum obtained in settlement.  (*Id*.)

The Class Settlement Amount is fully consistent with any risk at this stage in the litigation.  While Plaintiff would certainly have preferred to recover even more (and Defendant would have preferred to pay far less or zero), this outcome is in line with a carefully constructed estimate of the current fair value of the case.  (Leviant Decl., ¶ 17.)  On that basis, it would be unwise to pass up this settlement opportunity.  Again, the settlement amount falls *within* the statutory damages range, not below it.  (*Id*.)

After analyzing the claims in this matter, Plaintiff has concluded that the value of this Settlement is fair, adequate and reasonable, given that it is difficult to ascribe any of the worst motivations to Defendant that would justify a higher statutory penalty.  (Leviant Decl., ¶ 18.)

Considering the statutory framework and risks, this result here is fully supportable as reasonable.  (Leviant Decl., ¶ 19.) Certification rates are lower than conventional wisdom holds.  *See*, *e.g*., H. Scott Leviant, *Second Interim Report on class actions in California sheds new light on certification* (February 19, 2010), www.thecomplexlitigator.com, available at http://www.thecomplexlitigator.com/post-data/2010/2/19/second-interim-report-on-class-actions-in-california-sheds-n.html; *see also*, *Findings of the Study of California Class Action Litigation*, 2000-2006, available at http://www.courtinfo.ca.gov/reference/documents/class-action-lit-study.pdf (finding, as part of a study

conducted by the Judicial Council of California, at page 5, and in Table 9, at page 15, that only 21.4% of all class actions were certified either as part of a settlement *or* as part of a contested certification motion).

By obtaining reasonable value for the claim in light of the risks of litigation, Plaintiff clearly achieved a fair settlement that merits approval.

How class members respond to a class action settlement is typically addressed in concert with courts' assessments of a settlement's overall benefit to class members. *See generally*, *Vizcaino*, *supra*. State and federal courts alike take the measure of a settlement's "fairness" with reference to the class members' reaction, and specifically the extent to which class members object, and through their objections imply a settlement's unfairness. *See, e.g.*, *7-Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal. App. 4th 1135, 1152-53 (2000) (only nine objectors from a class of 5454 was an "overwhelmingly positive" fact that supported approval of the settlement); *Reynolds v. National Football League*, 584 F.2d 280 (8th Cir. 1978) (16 objectors out of 5400 strongest evidence of no dissatisfaction with settlement among class members); *American Eagle Ins. Co. v. King Resources Co.*, 556 F.2d 471, 478 (10th Cir. 1977) (only one objector "of striking significance and import"). Here, the absence of objections and requests for exclusion is an excellent indicator of the quality of the settlement, particularly given the class size.

### 2.     The Experience, Reputation, and Ability of Class Counsel

California law also recognizes the "skill and experience of attorneys" as appropriate criteria for evaluating a fee motion. *Flannery v. California Highway Patrol*, 61 Cal. App. 4th 629, 647 (1995); *accord In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491 (W.D. Pa. 2003) ("skill and efficiency of counsel" among fee motion criteria); *In re Heritage Bond Litig.*, 2005 U.S Dist. LEXIS 13555 at *64 (C.D. Cal. June 10, 2005) (Considering "the quality of Class Counsel's effort, experience and skill"). Class Counsel has had substantial experience with the causes of action here (Leviant Decl., at ¶¶ 21-26) and has regularly litigated employment law and FCRA class actions through appeals.

### 3.     The Effort Required by the Litigation Justifies the Fee

California and federal law also look to the time and labor required in connection with the litigation and settlement of a class action for which final approval is sought. *See Serrano*, 20 Cal. 3d at 49, *accord Vizcaino*, 290 F.3d at 1048-50. Compared to the reasonable value of the claims, Class Counsel expended

appropriate effort to achieve the settlement result.  (Leviant Decl. ¶¶ 12-19.)  The "time and labor" criterion weighs in favor of an award of the requested fees.

### 4.        Class Counsel Was Precluded from Other Employment

Another of the criteria for the evaluation of a preliminarily approved fee request is whether the settled litigation resulted in Class Counsel's foregoing other employment.  *Serrano*, 20 Cal. 3d at 49; *accord In re Public Serv. Co.*, 1992 U.S. Dist. LEXIS 16326 at *9 (S. D. Cal. July 28, 1992) (the opportunity cost of being precluded from representing other clients in other cases "weighs in favor of an award of one-third of the common fund").  Here, Class Counsel was precluded from other employment, a factor supporting the fee.  (Leviant Decl., at ¶ 30.)

### 5.        The Complexity of the Legal and Factual Issues

California law recognizes that the litigation's general complexity and "difficulty of the questions involved, and the skill in presenting them" are properly considered.  *Serrano*, 30 Cal. 3d at 49, *accord Wershba v. Apple Computer*, 91 Cal. App. 4th 224, 245 (2001). Complexity of legal issues was moderate here, though the fee is reasonable, rendering this factor irrelevant.  (Leviant Decl., ¶ 34.)

### 6.        Class Counsel Assumed Substantial Risk

The novelty and challenges presented by a class action, as well as the corresponding risk that the class members and class counsel will be paid no recovery or fee, is properly evaluated in connection with a fee motion.  *See Serrano*, 20 Cal. 3d at 49; *accord Vizcaino*, 290 F.3d at 1050-51 (multiplier applied to lodestar cross-check reflects risk of non-recovery).

Ninth Circuit and California state courts regard circumstances in which class counsel's work is wholly contingent as a factor weighing in favor of approving a negotiated fee award that approximates market rates.  *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132-33 (2001).  The unsettled nature of how to evaluate willfulness in this case, among other risks, was significant. (Leviant Decl., ¶ 15.) Class Counsel nevertheless faced that risk and a reasonable result was obtained.  (Leviant Decl., ¶¶ 30-34.)

### 7.        The Fee is Reasonable Under the Common Fund Doctrine

Courts in the Ninth Circuit and California generally use the "percentage method" rather than the lodestar approach when awarding attorneys' fees in a common fund settlement.  *See* 7 Witkin, B.E., CALIFORNIA PROCEDURE (2007 Supp.) §§ 255-261 at 236-241 (describing prevalence of percentage

method under California law); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377-78 (N.D. Cal. 1989) (Patel, J.) (endorsing percentage method).  *See generally*, *Serrano*, 20 Cal. 3d at 25; *accord Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).

        a)        *The standard fee award in class actions has, over time, resolved itself as one-third of the recovery in common fund cases.*

      According to a leading treatise on class actions, "No general rule can be articulated on what is a reasonable percentage of a common fund.  Usually 50% of the fund is the upper limit on a reasonable fee award from a common fund in order to assure that the fees do not consume a disproportionate part of the recovery obtained for the class, although somewhat larger percentages are not unprecedented."  *See* Conte & Newberg, Newberg on Class Actions (3rd Ed.) § 14.03.  Attorneys' fees that are fifty percent of the fund are typically considered the upper limit, with *thirty to forty percent commonly awarded in cases where the settlement is relatively small*.  *See id*; *see also, Van Vranken v. Atlantic Richfield Company*, 901 F. Supp. 294 (N.D. Cal. 1995) (stating that most cases where 30-50 percent was awarded involved "smaller" settlement funds of under $10 million).

      The proposed one-third fee award is consistent with the average fee award in class actions.[2]  The Ninth Circuit has directed that, to determine what constitutes a fair and reasonable percentage of the settlement for purposes of calculating common fund attorneys' fees, the courts should use a "benchmark" percentage of 25% of the total fund.  *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).  The percentage can be adjusted upwards where the risks overcome, the benefits obtained and the work necessary to achieve those results supports such an adjustment of the benchmark.  In fact, while the Ninth Circuit identified twenty-five percent as a fee percentage that is presumptively reasonable, the custom and practice in class actions is to award

---

[2] Awards of 33 percent or more are common in court-approved class actions litigated and settled by Class Counsel and other firms across the state.  (Leviant Decl., ¶ 35.)

approximately one-third of a fund as a fee award.  *See Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66, n.11 (2008) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around *one-third* of the recovery.") (emphasis added). Class Members will have the opportunity to object to the proposed award of fees and costs (or any other aspect of the settlement, if they so choose).

> b) *Plaintiff seek one-third of the Settlement Fund in fees.*

The compensation sought for Class Counsel is also fair and reasonable.  Here, the gross settlement fund obtained through the efforts of Class Counsel is $188,000.  (Leviant Decl., ¶ 10.)  Class Counsel has agreed to request no more than $62,600 in fees from the maximum settlement amount, or one-third of the maximum gross settlement amount.  Compared to a lodestar based on contemporaneously recorded and reasonably projected hours of approximately $81,885.00, the total compensation to Class Counsel is consistent with and less than their lodestar.  The "negative" multiplier necessary to reach the total requested compensation is approximately 0.76, a multiplier far below the multipliers of 3 or more that are routinely approved in class settlements.

> c) *Courts in this District Recognize That Fee Awards in Class Actions*
>
> *Frequently Exceed the Ninth Circuit Benchmark*

Separate from the lodestar approach, Courts in this District have recognized that fee awards in class action frequently exceed the benchmark of 25% in the Ninth Circuit:

> The percentage of the Settlement Fund that Lead Counsel seeks is slightly in excess of the benchmark of 25% established by the Ninth Circuit. *See, e.g., Powers v. Eichen,* 229 F.3d 1249, 1256 (9th Cir.2000). However, in most common fund cases, the award exceeds that benchmark. *Activision,* 723 F.Supp. at 1377–78 (surveying securities cases nationwide and noting, "This court's review of recent reported cases discloses that nearly all common fund awards range around 30% ...."); *see also Ikon Office Solutions,* 194 F.R.D. at 194 ("The median in class actions is approximately twenty-five percent, but awards of thirty percent are not uncommon in securities class actions."). The *Activision* court concluded that, where a court adopts the percentage method, "absent extraordinary circumstances that suggest reasons to lower or increase the percentage, the rate should be set at 30%." 723 F.Supp. at 1378. Plaintiffs provide substantial authority reflecting the same trend. Mot. for Fees at 12–13.

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047–48 (N.D. Cal. 2008).  Thus, as an alternative approach to the lodestar, a thirty percent fee award would be entirely consistent with a percentage-based award in a common fund case that includes the risk factors discussed herein, and one third is supportable

in light of the quality of the result and the unsettled legal questions surrounding this matter.

But perhaps most importantly, the proposed attorneys' fees were disclosed to the Class Members in the Notice issued to Class Members and no objections to the Settlement were asserted.

### 8.    A Lodestar Analysis Supports the Requested Fee

Despite the widely recognized limitations of the so-called "lodestar" method, California and federal courts recognize the utility of a lodestar "cross-check." *Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 46 (2000).  A lodestar "cross-check" analysis typically happens in three steps. *Cundiff v. Verizon California*, 167 Cal. App. 4th 718 (2008), *accord Vizcaino*, 290 F.3d at 1047.  First, a trial court must determine a baseline guide or "lodestar" figure based on the time spent and reasonable hourly compensation for each attorney involved in the case. *Serrano*, at 48.  Second, the court sets a reasonable hourly fee to apply to the time expended, with reference to the prevailing rates in the geographical area in which the action is pending. *Bihun v. AT&T Information System*, 13 Cal. App. 4th 976, 997 (1993) (16 years ago, affirming a $450 per hour rate for a Southern California litigation attorney).  Finally, a "multiplier" of the base lodestar is set with reference to the factors described in detail in this brief.  Across all jurisdictions, multipliers of up to four are frequently awarded.  NEWBERG, §14.03 at 14.  Often, multipliers of greater than four are warranted.

Looking at the work of attorneys for Plaintiff in this matter (*and excluding paralegals*), the lodestar calculation is as follows:

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| Shaun Setareh | 21.3 | $725 | $15,442.50 |
| H. Scott Leviant | 78.6 | $675 | $53,055.00 |
| H. Scott Leviant (est.) | 8 | $675 | $5,400.00 |
| William Pao | 4.3 | $375 | $1,612.50 |
| Lilit Ter-Astvatsatryan | 5.5 | $300 | $1,650.00 |
| Stacey Shim | 18.9 | $250 | $4,725.00 |
| | | **Total:** | **$81,885.00** |

(Leviant Decl., ¶ 28.)  The figures for estimated ("est.") time above reflect the best estimates of Class Counsel, based on their experience and the settlement class size, for the time that will be expended by Class Counsel between the filing of this motion and the hearing of Plaintiff's Motion for Final Approval. (*Id.*) This lodestar figure is in line with the requested fee, requiring a "negative" multiplier of 0.76.  (*Id.*) The multiplier needed to align the negotiated fee award with the attorney hours expended is below the multipliers of three or more routinely approved in class actions.  (*Id.*) Accordingly, the lodestar cross-check affirms that the fee award that has been preliminarily approved does in fact fall easily within the range of reasonableness. (*Id.*)

While the lodestar of Class Counsel more than justifies the fee requested, Courts have nevertheless expressed frustration with the lodestar approach for deciding fee awards, which usually involves wading through voluminous and often indecipherable time records.  Commenting on the lodestar approach, Judge Marilyn Hall Patel wrote in *In re Activision Securities Litigation*, 723 F. Supp. 1373, 1375 (N.D. Cal 1989):

> This court is compelled to ask, "Is this process necessary?"  Under a cost-benefit analysis, the answer would be a resounding, "No!"  Not only do the Lindy Kerr-Johnson analyses consume an undue amount of court time with little resulting advantage to anyone, but in fact, it may be to the detriment of the class members.  They are forced to wait until the court has done a thorough, conscientious analysis of the attorneys' fee petition.  Or, class members may suffer a further diminution of their fund when a special master is retained and paid from the fund.  Most important, however, is the effect the process has on the litigation and the timing of settlement.  Where attorneys must depend on a lodestar approach, there is little incentive to arrive at an early settlement.

The Ninth Circuit has similarly recognized that the lodestar method "creates incentives for counsel to spend more hours than may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward early settlement." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050, n.5 (9th Cir. 2002).  As a corollary, a defendant willing to recognize a potential error and settle at an early stage would face the increased risk that an early settlement overture would be rejected.  That did not happen here, in part because a percentage of the fund award encourages efficient litigation.  The Ninth Circuit has thus cautioned that, while a lodestar method can be used as a cross check on the reasonableness of fees based on a percentage of recovery method if a district court in its discretion chooses to do so, a lodestar calculation is not required and it did "not mean to imply that class counsel should necessarily

receive a lesser fee for settling a case quickly." *Id.*

The percentage of recovery method "rests on the presumption that persons who obtain benefits of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Staton*, 327 F.3d 938, 967 (9th Cir. 2003). This rule, known as the "common fund doctrine," is designed to prevent unjust enrichment by distributing the costs of litigation among those who benefit from the efforts of others. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989).

It is only fair that every class member who benefits from the opportunity to claim a share of the settlement pay his or her pro rata share of attorney's fees, and Plaintiff's request for fees here means that Class Counsel seek an amount of fees less than the amount Class Counsel would likely receive if they represented each class member individually. Typical contingent fee contracts of plaintiffs' counsel provide for attorney's fees of about 40% of any recovery obtained for a client. (Leviant Decl., ¶ 36.) It would be unfair to compensate Class Counsel here at a substantially lesser rate because they obtained relief for hundreds of class members. To the contrary, equitable considerations dictate that Class Counsel be rewarded for achieving a settlement that confers benefits among so many people, especially without protracted litigation. The result achieved by Class Counsel merits an award of attorney's fees equal to 33.3% of the total recovered value in this case.

*a)   Stetson Risk Factors Support an Award of the Requested Fee*

The *Stetson* risk factors – which are a restatement of risk factors recognized in *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997 (9th Cir. 2002) – exist because of the nature of contingent class representation:

> "It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *Washington Public,* 19 F.3d at 1299; *see also Vizcaino,* 290 F.3d at 1051. This provides the "necessary incentive" for attorneys to bring actions to protect individual rights and to enforce public policies. *In re "Agent Orange" Prod. Liab. Litig.,* 818 F.2d 226, 236 (2d Cir.1987). In common fund cases, there is no concern about financially burdening a defendant to compensate for the risk of nonpayment, because the attorney's fee award is deducted from the plaintiffs' fund. *Washington Public,* 19 F.3d at 1300. In such cases, the plaintiffs "should share the wealth with the lawyers whose skill and effort helped create it." *Id.*

*Fischel*, 307 F.3d at 1008.

**(1)     Setareh Law Group took this "case with the expectation that they [would] receive a risk enhancement if they prevail[ed]."**

When this case was taken on a contingent fee basis, with the firm agreeing to assume responsibility for litigation costs, the ultimate result was far from certain.  In the course of this litigation, Setareh Law Group LLP paid filing fees, copy charges, Westlaw fees, and mailing, telephone and express mail charges. There was never a guarantee that Setareh Law Group LLP would recoup those expenditures.  Setareh Law Group contributed its experience, time, and resources with no guarantee that it would be compensated for its time.  The firm took on this case, which necessarily required the firm to forego other opportunities, given finite resources to devote to cases.  (Leviant Decl., ¶ 30.)

Setareh Law Group took this case with the expectation that a risk enhancement, either in the form of a lodestar multiplier or a percentage of the fund award equivalent thereto, would be available if it prevailed. This expectation stems from the fact that many cases Setareh Law Group undertakes as putative class actions do not resolve successfully due to arbitration agreement enforcement, certification denial, dismissal motions, or summary judgment.  Moreover, the firm fairly perceives the class action field to be a risk-filled practice area.  The law is constantly evolving in this field.  Case viability swings unpredictably on a pendulum as courts of appeal limit or expand the previously understood scope of various claims.  As noted above, the percentage of cases successfully certified either through contested motions *or* settlements is low in both state and federal court.  (Levaint Decl., ¶¶ 31-32.)

Therefore, Setareh Law Group does anticipate upon the filing of a class action that a risk enhancement will be available (within reasonable limits).[3] (Levaint Decl., ¶ 33.) Here, no multiplier is expected, since the lodestar exceeds one-third of the gross settlement, putting the firm in a "negative" lodestar position.

---

[3] Setareh Law Group does *not* expect that a risk enhancement on its lodestar would be used to exhaust a common fund when the result is "upside down," meaning that the lodestar required to obtain the result approaches the value of the common fund itself, or even when the enhancement would consumer significantly more than one-third of the common fund.

**(2)** **The hourly rates of Setareh Law Group attorney are set in line with market hourly rates for hourly work, using the Adjusted Laffey Matrix, and those rates do not reflect the risk of nonpayment.**

As set forth more fully in the Declaration of H. Scott Leviant, the requested hourly rates are in line with market rates in San Francisco and Los Angeles, utilizing the Adjusted Laffey Matrix.  The firm's rates do *not* incorporate extra-market rates to build in a risk of nonpayment.  Rather, the rates are in line with metropolitan practice areas in Southern and Northern California.  (*See,* Declaration of H. Scott Leviant, at ¶¶ 26(d), 28-29, discussing the Adjusted Laffey Matrix compared to hourly rates for the firm.)

**(3)** **There is "evidence that the case was risky."**

While this factor is discussed in Plaintiff's Motion for Final Approval, it bears repeating that the outcome was far from certain here due to some substantial risk factors.  There are always significant risks associated with certification and trials, and those risks, which cannot be eliminated in this case, are undeniable. Specific risks associated with this matter include:  (i) the risk that Plaintiff would be unable to establish liability, including that the Plaintiff could not establish willful violation of the FCRA, which was a requirement for Plaintiff's claims after the motion to dismiss was granted; (ii) the risk that Defendant's challenged employment policies might not ultimately support class certification or a class-wide liability finding; (iii) the risk that uncertainties pertaining to the ultimate legality of Defendant's form could preclude recovery or class-wide awards of statutory penalties; (iv) the risk that individual differences between Settlement Class Members could be construed as pertaining to liability, and not solely to damages; (v) the risk that any civil penalties awarded under the FCRA for the improper notice alleged in this case could be set by the Court in its discretion at the minimum amount recoverable, which was $100 per individual proving a violation; and (vi) the risk that lengthy trial or appellate litigation could ensue over any of the above issues.  (Leviant Decl., ¶ 15.)

Continued litigation of this lawsuit presented Plaintiff and Defendant with substantial legal risks that were (and continue to be) very difficult to assess.  This Settlement provides a benefit to the Class Members that is very reasonable in light of these particular risks, and the small risk multiplier requested is consistent with the very substantial risks presented here.

b)   *Kerr Factors*

Separate from the *Stetson* factors, this Court is also authorized to adjust lodestar based on the *Kerr*

factors.  As the Ninth Circuit summarized in another case:

> Though the lodestar figure is "presumptively reasonable," *Cunningham v. Cnty. of Los Angeles,* 879 F.2d 481, 488 (9th Cir.1988), the court may adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of "reasonableness" factors, "including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment," *Hanlon,* 150 F.3d at 1029 (citing *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir.1975)[7]). Foremost among these considerations, however, is the benefit obtained for the class. *See Hensley v. Eckerhart,* 461 U.S. 424, 434–36, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *McCown v. City of Fontana,* 565 F.3d 1097, 1102 (9th Cir.2009) (ultimate reasonableness of the fee "is determined primarily by reference to the level of success achieved by the plaintiff").

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941–42 (9th Cir. 2011).  In this regard, the *Kerr*

factor analysis intersects with the "evidence of risk" factor in the *Stetson* analysis.  The result here should

be judged against the risk of non-recovery.  The risk of non-recovery was not insignificant.  This Court

could have concluded that, even if the FCRA violation was absolutely clear, it was not willful.  That the

firm obtained a sound, classwide settlement is, by that measure, fairly impressive, given the real risk of no

recovery.  Thus, the "benefit obtained" and the "risk of nonpayment" *Kerr* factors, as applied here, support

a multiplier, and the benefit factor is the primary factor considered.  The complexity and novelty factor

leans mildly in favor of Plaintiff's position as a number of FCRA issues are still somewhat unsettled at this

time.[4]  The result, the most important element, implies that the representation was above average.

Regrettably for Plaintiff's counsel, the fact that the *Kerr* factors support a multiplier is irrelevant

beyond supporting an award of fees equal to one-third of the gross Settlement Amount.  Even a tiny

multiplier of "2" would result in a fee award that consumed most of the common fund, an inequitable

result.  But an award of one-third, reached with a negative multiplier no less, *is* fair and supportable.

c)   *The "Negative" Multiplier Here Would Fall Well Below the Range of*

*Common Lodestar Multipliers*

Comparing a percentage fee award to the lodestar "provides a check on the reasonableness of the

---

[4] Plaintiff's counsel is aware of at least two appeals pending in the Ninth Circuit that could address aspects of FCRA claims.

percentage award." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002). Percentage awards in the range of one to four times the lodestar are common. *Id.* at 1051 n.6 (finding a range of 0.6 to 19.6 in a survey of 24 cases, with 83% in the range of 1.0 to 4.0 and 54% in the 1.5 to 3.0 range, and citing *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998) ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied." (quoting 3 Newberg § 14.03 at 14-15))).

### 9.  Plaintiff's Counsel Requests Actual Costs

Plaintiff also requests an award of actual costs in the amount of $2,393.89 for costs already incurred and an additional $300.00 for airfare (estimated to be approximately $250 for the roundtrip), transit on BART (estimated to be $22 from the Oakland airport), and airport parking and mileage (estimated to be $42).  (Leviant Decl., ¶ 46.)

## V.  **CONCLUSION**

This settlement is fair and reasonable, especially given the claims and the potential defenses to them and to class certification.  Thus, the $188,000 settlement is worthy of final approval.  And because Plaintiff's counsel were required to expend resources and take risks to obtain that result, fair compensation is also reasonable.  For the reasons set forth herein, Plaintiff requests that the Court award Plaintiff's counsel $62,660 in fees, which is one-third of the gross settlement and roughly 0.76 times the calculated lodestar of Plaintiff's counsel, plus actual costs of $2,393.89 and additional costs of travel and appearance at the final approval hearing in the amount of $300.00.

Respectfully submitted,

Dated: January 2, 2019              **SETAREH LAW GROUP**

By: _____
Shaun Setareh
H. Scott Leviant

Attorneys for Plaintiff